**TRAVELERS INS. CO. v. NORTON, Deputy Commissioner, Third Compensation Dist., et al.**

No. 1685.

District Court, E. D. Pennsylvania.

March 3, 1942.

J. B. H. Carter (of Evans, Bayard & Frick), of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Asst. U. S. Atty., both of Philadelphia, Pa., for Norton.

Freedman & Goldstein, of Philadelphia, Pa., for Bernatowicz.

BARD, District Judge.

Both defendants filed motions to dismiss the complaint. On July 21, 1939, John Bernatowicz, while employed as a stevedore

loading a cargo of steel, was struck on the left foot by a crowbar on which was a draft of steel plates weighing about 4,000 pounds. He was treated at a hospital for several weeks, after which he received further treatment at the clinic of his employer's insurance carrier, the plaintiff in this action. He returned to work as a stevedore on November 10, 1939, and continued to work until February 16, 1940. On February 23, 1940, he entered the Frankford Hospital, where he remained until May 2, 1940. During this period it was found necessary to amputate his right third toe, which had become gangrenous. Since that time he has not returned to work.

Plaintiff insurance carrier voluntarily paid compensation to Bernatowicz under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., until November 10, 1939, when he returned to work. On March 7, 1940, Bernatowicz filed a claim for compensation, alleging that the injury which he had received in July of 1939 had caused his then current disability. Following a hearing on this claim before Deputy Commissioner Norton, at which Bernatowicz was not represented by counsel, the Deputy Commissioner made an order in which he found that the claimant's compensable disability had ceased November 10, 1939, and that the subsequent disability resulted from Buerger's disease, which was unrelated to the injury received by the claimant. Bernatowicz subsequently obtained counsel and upon petition the Deputy Commissioner reopened the matter to permit claimant to produce additional evidence. After a number of hearings, the Deputy Commissioner made a compensation order in which he made the following finding of fact: "That a mistake in a finding of fact was made in the finding that the disease suffered by the claimant and his disability therefrom was not caused by or related to the injury; that the injury of July 21, 1939, and the trauma to the right foot, consisting of additional strain thrown upon it by favoring the left foot while it remained painful because of the injury, caused acceleration of the progress of the vascular disease by which claimant was affected; that the subsequent disability, beginning on February 17, 1940, has been advanced in time and increased in degree by the results of the injury; that claimant has been totally disabled from the injury, * * *" to the time of the order, which was rendered on August 8, 1941.

This action was brought by the insurance company to review the order of the Deputy Commissioner in accordance with the procedure provided for in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(b). Plaintiff challenges the sufficiency of the evidence to establish, first, that a causal relation existed between the accidental injury to claimant's foot and the affliction manifested in his right foot and resulting in his disability, and second, that claimant was totally disabled.

■■ The sole question is whether the findings of the Deputy Commissioner are supported by substantial evidence. The function of the court upon review was set forth by the Circuit Court of Appeals in this circuit in Southern S. S. Co. v. Norton, 3 Cir., 101 F.2d 825, at page 827, in which Judge Biggs stated: "The question presented to the court below was one of law. Was there or was there not sufficient evidence to support the findings of fact made by the Commissioner to the effect that the claimant suffered the disability found to exist, bearing in mind that the claimant was entitled to a liberal construction of the Act and that doubts should be resolved in his favor? Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 59 F.2d 1042; Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366. It must also be borne in mind that the Longshoremen's and Harbor Workers' Act does not authorize a court of the United States to re-weigh the evidence and draw conclusions therefrom other than those found by a Deputy Commissioner unless it shall appear that there was no substantial evidence to support the findings of the Deputy Commissioner."

■ On the first point raised by the plaintiff in this action there was serious conflict in the medical opinion produced by the parties. All the doctors agreed that claimant was suffering from an ailment known as thrombo-angitis obliterans or Buerger's disease. This is a disease of the deeper larger vessels in the extremities of the body, resulting in the blocking of these vessels and frequently in gangrene and the necessity of amputation of the affected parts. The exact cause of the disease is unknown to medical science. The medical witnesses in this case appear to agree, however, that it is not traumatic in origin and that its probable cause is an infection. Their disagreement is as to whether the

injury to claimant's left foot so accelerated the progress of this disease as to cause the serious manifestations thereof in his right foot which resulted in the amputation of his right third toe and his disability. If it did, the compensation order was proper, since it is well settled that disability resulting from the aggravation of an existing ailment or condition is compensable. Wood Preserving Corp. v. McManigal, D.C., 39 F.Supp. 177, and cases cited therein; Annotations: 19 A.L.R. 95; 28 A.L.R. 204; 60 A.L.R. 1299. Inasmuch as the plaintiff's medical witnesses flatly asserted that there was no aggravation or acceleration of the claimant's disease, as manifested in his right foot as a result of the injury to his left, the award, if sustainable, must be based on the evidence given on behalf of the claimant and that given by an impartial medical witness to whom the record was referred by the Deputy Commissioner for information and guidance.

On behalf of the claimant expert testimony was offered by Dr. David W. Kramer, a specialist in vascular disorders. This doctor had examined the claimant and had studied the history of his condition. His testimony was that as a result of the accident it appeared that claimant's left leg had become infected, causing swelling therein and the chills and sweats which had been testified to by the claimant. Dr. Kramer further testified that in his opinion this infection and the added strain on claimant's right leg aggravated claimant's condition and brought forth the symptoms in his right foot resulting in his disability.

The other testimony relied upon by the claimant is that of Dr. Laplace, who studied the entire record and examined the claimant at the request of the Deputy Commissioner. His testimony was that there was evidence of phlebitis in the claimant's left leg as a result of his injury, and that because of the additional strain upon the right leg because of claimant's favoring his injured leg, it was his "arbitrary opinion, based solely on clinical judgment rather than on what I consider uncontrovertible evidence, * * * that the manifestations of the disease were accelerated by the accident."

While it is true that the opinions expressed by these witnesses as to the aggravation of claimant's condition as a result of the accident were cautious and were not expressed with unhesitating conviction, it must be remembered that the disease in question is one on which medical knowledge is limited and that the medical issue presented in this case is one as to which the state of medical science could hardly permit an unqualified and unequivocal answer. Under these circumstances, the court is unable to state that there is no evidence which supports the finding of the Deputy Commissioner that the progress of the disease was accelerated by the injury and that the claimant's disability, therefore, resulted from the accident.

 The second question relates to the sufficiency of the evidence to support a finding of total disability. Dr. Laplace testified that although claimant was not totally disabled in a medical sense, it would be inadvisable for him to do any heavy work or be exposed to cold, dampness or trauma. Considering the fact that the claimant was an illiterate longshoreman of foreign extraction, forty-seven years of age, and lacking in skill, it cannot be said that he was not totally disabled within the meaning of the Act. Eastern S. S. Lines v. Monahan, D.C., 26 F.Supp. 944.

Motions to dismiss granted.