**F. H. McGRAW & CO. et al. v. LOWE et al.**

**No. 111.**

Circuit Court of Appeals, Second Circuit.

Nov. 29, 1944.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Raymond Parmer, of New York City, of counsel), for appellants.

James B. M. McNally, U. S. Atty., of New York City (John F. Ryan, Asst. U. S. Atty., Ward E. Boote, Chief Counsel, U. S. Employees' Compensation Commission, and Herbert P. Miller, Assistant Chief Counsel, all of New York City, of counsel), for appellee Lowe.

Isaac M. Rothenberg, of New York City, for appellee Rick.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the plaintiffs from a summary judgment for the defendants in an action seeking judicial review of an order of the deputy commissioner for the second compensation district which awarded compensation under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., to the claimant, Harry Rick. The

plaintiffs were Rick's employers and their insurance carrier; the defendants were the deputy commissioner and the compensation claimant. The complaint alleged that the compensation order was not made in accordance with law for reasons hereafter to be stated.

On May 18, 1942, Rick sustained an accidental head injury in the course of his employment in Bermuda.[1] Alleging that such injury resulted in a condition known as Parkinson's disease, he filed a claim for compensation against his employers and their insurance carrier. They defended upon the ground that the disease was not causally related to the injury. This was the sole disputed issue at the hearing before the deputy commissioner. One expert neurologist gave testimony that such a causal relationship existed; two other expert witnesses expressed a contrary opinion. The deputy commissioner's compensation order contains a finding of fact that "the disease resulted from the accidental injury sustained on or about May 18, 1942." But he also filed a paper entitled "Memorandum for the File", bearing his signature and the same date as the compensation order, and a copy thereof was served upon the insurance carrier together with a copy of the compensation order. The appellants contended in the District Court, and repeat the contention here, that this memorandum contradicts the deputy commissioner's finding of causal relationship between the claimant's head injury and the later developed Parkinson's disease, and proves that the deputy commissioner had not actually determined the disputed issue upon the evidence presented but acted arbitrarily and did not give a hearing which meets the requirements of due process of law. The complete text of the memorandum is printed in the margin.[2]

■ The appellants' action is based on section 21(b) of the Act, 33 U.S.C.A. § 921(b), which provides that "If not in accordance with law, a compensation order may be suspended or set aside * * *." If we are required to confine our consideration to the deputy commissioner's order and the transcript of the evidence taken before him, it cannot be doubted that the award must stand. Citation of authority is scarcely needed for the proposition that

---

[1] The Longshoremen's and Harbor Workers' Compensation Act was made applicable to Bermuda by the Defense Bases Act of August 16, 1941, 42 U.S. C.A. § 1651 et seq.

[2] United States Employees' Compensation Commission
District No. 2
641 Washington Street, at Christopher
New York City
File No. DB-2-11425-1116
June 22nd, 1943.
Memorandum For the File
Re: Harry Rick v. F. H. McGraw Co., and Purdy & Henderson Co. Inc.

This is a question of causal relationship between an accident of seeming unimportance and a disease not commonly associated with trauma. Three neurologists of experience and repute have examined the claimant and expressed their opinions, two of them that the condition was neither caused nor affected by the injury, and one that a relationship is possible and even probable.

In such circumstances, a trier of fact is faced with more than ordinary responsibility in reaching a decision as to the compensability of the claim. Whatever may be the ultimate conclusion, uncertainty as to its correctness and justice will persist. What, then, should guide the one having the inescapable duty of resolving such a question? I know no answer, other than "administrative policy". Such refuge, however, does nothing for the intelligent solution of a problem for which one feels there should be a solution of something by more than the "hit or miss" method. Dissatisfaction which a decision on such a basis leaves is only mitigated by the knowledge that there is little reason for laymen to be embarrassed, because of their inability to decide problems which eminent medical men are unable to agree upon, and also by the fact that administrative policy intends to place the burden of possible error upon those best able to withstand it—in this instance, the employer, the insurance carrier, the Government, and the people, rather than upon the individual.

Accepting, then, the minority opinion and upon the basis that doubtful questions incapable of scientific resolution are to be resolved in favor of the workman, this claim will be allowed.

The award has been brought up to date in view of the fact that the character of the disability has again changed to temporary total, claimant having been discharged from his second employment on June 9, 1943 because of unsatisfactory service. This was, of course, forecast by all the physicians who have examined him.

Samuel S. Lowe
Deputy Commissioner.

the weight of the evidence and the credibility of witnesses are not open to judicial review. Crowell v. Benson, 285 U.S. 22, 46, 52 S.Ct. 285, 76 L.Ed. 598; Steamship Terminal Operating Corporation v. Schwartz, 2 Cir., 140 F.2d 7, 8. Indeed, the appellants do not question that Dr. Kennedy's testimony would be ample support for the finding of causal relationship, despite the contrary opinion of two other experts. They contend, however, that the hearing officer's "Memorandum for the File" shows that his formal finding was not the result of an exercise of judgment upon the evidence. The appellees reply that the memorandum is no part of the compensation order and may not properly be considered by the court. See American Mut. Liability Ins. Co. of Boston v. Lowe, 3 Cir., 85 F.2d 625; Aetna Life Ins. Co. v. Hoage, 64 App.D.C. 185, 76 F.2d 435.

Neither of these cases is precisely in point. If a deputy commissioner should file a memorandum so clearly contradicting the formal findings of his order as to show that he had not exercised his duty of basing his findings upon the evidence—for example, to assume the most extreme case conceivable, if the memorandum showed that the hearing officer had made his findings by tossing a coin—we are not prepared to hold that the formal finding of the compensation order must be accepted without regard to the accompanying memorandum. The requirement that a hearing be accorded has regard to "judicial standards", Morgan v. United States, 304 U.S. 1, 19, 58 S.Ct. 773, 999, 82 L.Ed. 1129, and means that the hearing officer must act in a manner "consistent with the essentials of a fair trial," and not arbitrarily. Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 393, 58 S.Ct. 334, 82 L.Ed. 319. But we do not interpret the memorandum involved in the case at bar as proof that the deputy commissioner failed to meet these requirements. It speaks first of the responsibility facing the trier of fact in reaching a decision when technically trained experts disagree; it recognizes that uncertainty as to the correctness and justice of a decision in such circumstances will persist, whatever the decision may be; it refers to the mitigation of dissatisfaction which may be found in the knowledge that experts disagree and that "administrative policy" of the statute intends to place "the burden of possible error" on those best able to bear it;

and it states that in allowing the claim the deputy commissioner is "accepting" the minority opinion, and comforting himself by the thought that "doubtful questions incapable of scientific solution are to be resolved in favor of the workman." We do not read the memorandum as showing that the deputy commissioner did not base his finding of causal relationship between the injury and the disease upon the evidence submitted. It shows merely that the hearing officer had entertained doubt and in resolving that doubt in favor of the claimant had been somewhat influenced by the policy frequently announced by the courts that doubt "be resolved in favor of the injured employee or his dependent family." Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 59 F.2d 1042, 1044; Southern Pacific Co. v. Sheppeard, 5 Cir., 112 F.2d 147, 148; Travelers Ins. Co. v. Norton, D.C., 43 F.Supp. 531, 532; cf. Report of Robert M. Benjamin, entitled Administrative Adjudication in the State of New York, p. 222.

Judgment affirmed.