## MIXON v. WILLARD.

United States District Court
S. D. New York.
April 12, 1954.

Abraham Sher, New York City, for plaintiff.

J. Edward Lumbard, U. S. Atty., Milton R. Wessel, Asst. U. S. Atty., New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

Plaintiff moves for summary judgment to set aside an order of the defendant, a Deputy Commissioner, Bureau of Employees' Compensation, Department of Labor, which rejected plaintiff's application to reopen his claim for compensation. Defendant has filed a cross-motion for summary judgment.

Plaintiff was injured on March 31, 1946, while engaged as a freight handler in discharging a float in the North River at New York City. He received a temporary total and temporary partial disability award on March 29, 1951. On February 21, 1952, plaintiff made application to reopen his claim, asserting a substantial change in his condition. Thereafter the case was reopened and hearings were conducted before the defendant under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, hereafter the Act, 33 U.S.C.A. § 922. Defendant, finding that no substantial change in plaintiff's condition had occurred since his first award, rejected plaintiff's application.

Plaintiff contends that he was denied due process of law in that, at the hearing, the Deputy Commissioner refused to (1) allow plaintiff's attorney, upon cross-examination, to impeach a Dr. Hyslop, one of the carrier's medical experts, by confronting him with statements in a medical treatise tending to contradict his opinion; (2) allow plaintiff's attorney, upon cross-examination, to question a Dr. Brock, designated as an impartial specialist, as to possible improper interest or bias.

Defendant, on the other hand, urges that no rights were denied the plaintiff since common law and statutory rules of evidence and technical rules of procedure are not binding on a deputy commissioner, when he conducts hearings under the Act. Defendant further urges that since the record as a whole supports the deputy commissioner's decision, that decision must stand.

█ Except where certain procedural and evidentiary rules are prescribed, Section 923 of the Act makes clear that a deputy commissioner conducting a hearing "shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure * * * but may make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties."[1] It is clear, however, that even under this liberal provision a hearing officer must act consistently with fundamental principles inherent in due process of law. The general provisions of Section 923 do not dispense with a right so fundamental in Anglo-Saxon law as the right of cross-examination. Southern Stevedoring Co., Inc. v. Voris, 5 Cir., 1951, 190 F.2d 275, 277. See also F. H. McGraw & Co. v. Lowe, 2 Cir., 1944, 145 F.2d 886.

█ Decision turns, therefore, not on any purported authority of the deputy commissioner to prevent or arbitrarily limit cross-examination, for he has no such authority, but on whether the deputy commissioner denied the substantial rights of the plaintiff by not allowing plaintiff's attorney to proceed with the

---

[1]. 33 U.S.C.A. § 923.

questions he sought to ask Doctors Hyslop and Brock. Southern Stevedoring Co., Inc. v. Voris, supra; F. H. McGraw & Co. v. Lowe, supra. The first question, directed to Dr. Hyslop was as follows:

"Q. Do you agree, doctor, with this statement as expressed by Dr. Savitsky that 'too frequent diagnosis of malingering is in our opinion to a large extent the expression of the underlying hostility on the part of many physicians towards patients seeking compensation?'"

The question was never answered for the carrier's counsel objected.

"Mr. O'Hae: I will object to the question unless this doctor that made that statement is produced here for cross-examination.

"Mr. Sher: Well, we can't produce Savitsky. Unfortunately, he died last week.

"The Deputy Commissioner: I will sustain the objection."[2]

While it is proper to confront an expert witness with a portion of a medical treatise of recognized authority and ask his opinion of the views there expressed, Travelers Ins. Co. v. Branham, D.C.1945, 61 F.Supp. 637, 638–639, no denial of due process resulted from the deputy commissioner's ruling here. For one reason, there is no showing in the record that plaintiff established, or that Dr. Hyslop recognized, that Dr. Savitsky was an authority on the subject in dispute.[3] Hence, his purported opinion on a particular topic was properly excluded. See Reck v. Pacific-Atlantic S. S. Co., 2 Cir., 1950, 180 F.2d 866, 868. Furthermore, even if Dr. Savitsky had been shown to be an authority in the field of neuropsychiatry, his opinion as to the "frequent diagnosis of malingering" was, in fact, little more than a general observation on the attitude of other doctors. It is difficult to see how the answer to the question, whether negative or affirmative, could have significantly affected the ultimate decision. Finally, the limits of cross-examination to impeach an expert witness by using other authorities in the field was in this case within the discretion of the deputy commissioner. Cf. Mutual Ben. Health & Accident Ass'n v. Francis, 8 Cir., 1945, 148 F.2d 590, 597–598.

The second question in issue here was directed to Dr. Brock, who concededly did work for many insurance companies and was a consulting physician for the United States Marine Hospital and the Veterans Administration. Plaintiff's counsel asked Dr. Brock:

"Is there one single case that you examined for an insurance company in the year 1952 where you gave causal relation?"

Defendant's objection to the question was sustained. While the deputy commissioner might have allowed plaintiff to pursue this line of questioning further in an attempt to show possible bias, it certainly cannot be said that plaintiff was denied due process of law because the deputy commissioner sustained defendant's objection. Dr. Brock admittedly was often called as a neuro-psychiatric consultant by both insurance companies and by claimants. The deputy commissioner was well aware of this fact[4] and of plaintiff's effort to affect the weight of Dr. Brock's testimony. The deputy commissioner did not abuse his discretion in limiting cross-examination on this point.

Finally, an examination of the record as a whole reveals substantial evidence to support the deputy commissioner's finding that no change in plaintiff's condition had occurred, since the original order of compensation was made. O'Leary v. Brown-Pacific-Maxon, 1951,

2. Record, pp. 132–133.

3. Examination of the testimony shows that plaintiff mentioned the names of four persons: Negeli and Reichert and Strauss and Savitsky (Record, pp. 125, 127). Nothing shows, however, that they were admitted authorities in the "field". (It is not stated to which "field" plaintiff refers.)

4. Record, p. 83 et seq.

340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483. Four doctors, two for each side, testified at the hearings. Their opinions were conflicting. It is significant, however, that the one doctor who saw plaintiff both shortly after the accident in 1946, and again in 1953, testified that no significant change in plaintiff's condition had occurred between the two examinations. This evidence, as well as the testimony of Dr. Brock, gives substantial support to the findings of the deputy commissioner.

The plaintiff's motion is denied; the defendant's cross-motion is granted.

Settle order.