FIDELITY & CASUALTY CO. OF NEW YORK v. BURRIS.

BURRIS v. HOAGE, Deputy Com'r.

Nos. 5512, 5513.

Court of Appeals of the District of Columbia.

Argued May 31, 1932.

Decided June 20, 1932.

Gilbert L. Hall, of Washington, D. C., for appellant the Fidelity & Casualty Company of New York.

James J. Slattery, of Washington, D. C., for appellee and cross-appellant Emma Burris.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a case arising under the Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927, 44 Stat. 1424, 33 USCA § 901 et seq., made applicable to the District of Columbia by Act of May 17, 1928, 45 Stat. 600 [Tit. 19, §§ 11 and 12, D. C. Code 1929, 33 USCA § 901 note]). The deputy commissioner denied compensation. The lower court, on a petition for injunction, thought the deputy commissioner's conclusion was wrong and entered an order setting aside the finding. The case is here on appeal and cross-appeal.

The question we have to decide is this: Does an employee who suffers a heat stroke while at work in the open sustain an injury which arises out of his employment within the meaning of section 902(2) and 902(11) of title 33, USCA? On behalf of the insurance carrier, it is contended that the cause of the injury was the abnormal heat to which the general public were subjected and not to any special hazard due to increased heat resulting from the occupation in which the employee was engaged at the time of the injury. The facts are these:

The employee was at work with other laborers in the open air on Harvard street, in Washington, and was engaged in taking up the old curbing and gutter and replacing it with new curbing and gutter. At the time of the sunstroke he was loading broken pieces of old curbing on a truck with a shovel. The day was very hot. The temperature at 8 o'clock in the morning was 79 degrees Fahrenheit and at 11 o'clock 92 degrees in the shade. Where the employee was at work there was little or no shade. About 11 o'clock employee started toward a water barrel and on his way collapsed. He was taken to a hospital and died there that evening from heat prostration or sunstroke.

His widow filed application for compensation with the commission, and, after hearing, the deputy commissioner rejected the application on the ground that it was not proven that the heat stroke from which decedent died arose out of and in the course of the employment. The basis of the finding was that the employee was not exposed to a hazard beyond that to which the general public was subjected. The lower court, on the other hand, held that, notwithstanding the public was subjected to the same atmospheric conditions, the death arose both out of and in the course of employment, because the general public was not subjected to the arduous character of work in which decedent was at the time engaged.

It is first insisted that both the lower court and ourselves are bound by the findings of fact of the deputy commissioner, but it is sufficient to say as to this that we have many times held that, upon a review of the record made before the deputy commissioner, our duty is to determine whether his order was or was not in accordance with law, and this depends upon whether the testimony taken before the deputy commissioner will sustain his finding. In this case the facts are all agreed, and the difference between the deputy commissioner and the court is to the conclusion to be reached from the admitted facts. As we view the matter, there is no evidence on which to sustain the deputy commissioner's finding. It is conceded that deceased was engaged in manual labor on an unshaded street on an intensely hot day. The official temperature reading having been taken from an elevation considerably above the street

and in the shade, it is fair to assume that in the unprotected street the heat was abnormal and far greater than the official reading would indicate. His work required him to remain exposed to the sun's rays, and this, of course, was not true of the community generally. His employment therefore exposed him to a risk essentially arising out of the work.

 The decision of the case turns, we think, upon the answer to two questions: First, is death from sunstroke an accidental injury? Second, did the sunstroke arise "out of and in the course of employment"? Both questions should be answered in the affirmative.

The term "accidental injury," as used in the act, means any unexpected misfortune or mischance resulting in some form of bodily injury—an injury due to accident or caused by some sudden or unexpected occurrence. Deceased admittedly was killed by sunstroke. That was the injury. It was sudden and unexpected, and hence accidental. All of the cases which we have had an opportunity to examine agree that the expression "accidental" in compensation statutes is used in its popular and ordinary sense and connotes and includes an unexpected personal injury resulting to a workman in the course of his employment from any unlooked-for mishap or occurrence. See Fenton v. Thorley [1903] App. Cas. 443. See also Ahern v. Spier, 93 Conn. 151, 105 A. 340; State ex rel. Rau v. District Court, 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918; Walsh v. River Co., 41 R. I. 490, 103 A. 1025, 13 A. L. R. 956; Townsend et al. v. Taggart, 81 Ind. App. 610, 144 N. E. 556; Ferrara's Case, 269 Mass. 243, 169 N. E. 137; City of Joliet v. Comm., 291 Ill. 555, 126 N. E. 618; Young v. Furn. Co., 101 Neb. 696, 164 N. W. 712, L. R. A. 1918B, 1001; Skelly Co. v. State Comm., 91 Okl. 194, 216 P. 933.

 As we have already seen, deceased was engaged in manual labor for which he had been employed, and he received the injury from which he died while so engaged. The day was extremely hot. The street was unshaded and the work was incessant, requiring in its execution constant exposure to the sun's rays. We think we are safe in saying that except for these conditions the injury would not have occurred and death would not have ensued. The very statement of the facts shows indisputably that deceased was exposed to a hazard in the course of his employment that did not apply to the community generally, and whenever this occurs, that is to say, whenever the work exposes the employee to a risk or hazard to which the general public is not exposed, and an injury results therefrom, the injury arises out of and in the course of the employment and is the proximate result thereof, and hence within the terms of the act. See Hughes v. St. Patrick's Cathedral, 245 N. Y. 201, 202, 156 N. E. 665. The underlying purpose of all compensation laws is to provide money indemnity in case of injury where there is no assignable fault. Accidents in industry are inevitable, and the enactment of compensation laws grew out of a general recognition of a duty owing by society to an injured employee to secure him protection, and this the act seeks to accomplish through the means of insurance built up by premiums paid by employers. Where there is doubt, it should be resolved in favor of the injured employee or his dependent family. In the circumstances shown in the record here, we think petitioner established a case of accidental death arising out of the employment and compensable under the statute. To reach a different conclusion would be to indulge subtlety at the expense of the plain purpose and intent of the law.

The decree of the lower court should be modified in so far as it denied a mandatory injunction, and, as modified, affirmed, with instructions to issue a mandatory injunction to the deputy commissioner requiring him to make the award of compensation as the law directs.

Modified and affirmed.