ROBINSON v. BRADSHAW et al.

No. 11515.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 16, 1953.

Decided April 16, 1953.

Petition for Rehearing in Banc Denied
July 30, 1953.

Mr. Reginald B. Jackson, Washington, D. C., with whom Messrs. Richard W. Tompkins and Lawrence E. Smith, Washington, D. C., were on the brief, for appellant.

Mr. Ward E. Boote, Asst. Sol., United States Department of Labor, with whom Messrs. Charles M. Irelan, U. S. Atty.,

436

Joseph M. Howard, Asst. U. S. Atty. at the time the brief was filed, and James E. Hughes, Atty., United States Department of Labor, were on the brief, for appellee Theodore Britton. Mr. William R. Glendon, Asst. U. S. Atty., also entered an appearance for appellee Theodore Britton.

Mr. Charles B. DeShazo, Washington, D. C., for appellees William Bradshaw and United States Fidelity & Guaranty Co.

Before CLARK, WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Acting through its Deputy Commissioner the District of Columbia Compensation District denied benefits under the Workmen's Compensation Act by reason of the death of James William Robinson.[1] The application was made by his surviving wife on behalf of herself and their minor children. Complaint was then filed in the District Court in an effort to compel an award. Upon dismissal of the complaint this appeal was taken.

The question in the end is whether Robinson's death arose out of and in the course of his employment. Insofar as the answer depends upon the facts the Deputy Commissioner's findings of fact "are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole", O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483. In one critical respect we think they lack such support and that this, together with the statutory presumption that the claim comes within the provisions of the Act, requires reversal.

The death occurred in an unusual manner. Deceased was an employee of Bradshaw, a contract hauler of lumber and other materials, whose business location was in the District of Columbia where the employment took place. Deceased drove a tractor-trailer vehicle for his employer. On August 1, 1950, he drove down to the vicinity of Wakefield, Virginia, to aid in the fulfillment of a hauling contract his employer had entered into with the Reese Lumber Yard there. In connection with this work a few days later, August 4, he was sent on a long trip into North Carolina and arrived back at the Reese Lumber Yard in the middle of the night of August 5. About an hour later he appeared on a porch of a resident screaming and hollering that a mob was after him, calling for help and for the police, and asking to be let in. When the occupant of the house came out with a gun in his hand deceased ran away still screaming and hollering. No mob was seen by the occupant, who called the Deputy Sheriff. The latter and another officer found deceased standing and hollering and throwing up his hands as if he were trying to stop someone, but they could see no one else around. They placed him in jail. In the morning he was examined by a doctor who recommended he be committed to a mental institution for observation. About the middle of the day the Deputy Sheriff unlocked the cell to take deceased to a different place because it was not convenient to keep him at the Wakefield lock-up except for a short time. When the officer opened the cell door deceased attacked him. The officer retreated and was pursued and engaged by deceased. Having gotten outside the lock-up, the officer remembered leaving another man inside with deceased and went back in. He was again engaged, retreated, was pursued and engaged again. There was testimony deceased struck him with handcuffs. The officer shot and killed deceased.

The Deputy Commissioner found that deceased

"* * * became mentally disturbed, confused, highly agitated, and obsessed with the hallucination that a mob or a group of persons were chasing him with intent to do him bodily harm * * *";

that this condition was

"* * * due to illness; that the said illness caused him to attack the

---

1. The Act, § 36–501, D.C.Code (1951), makes applicable to the District of Columbia the Longshoremen's and Harbor

Workers' Compensation Act, 44 Stat. 1424 et seq. (1927), 33 U.S.C.A. §§ 901 et seq., 901 note.

peace officer * * * and was the cause of his death * * *";

and that the illness was not the result of personal injury arising out of and in the course of the employment.

But he also found that the illness was not

"* * * aggravated by or otherwise related"

to the employment.

 Several doctors testified, one of whom had examined the deceased in the jail. Their testimony, coupled with the evidence of events leading up to the death, gives support to the findings that deceased was suffering from an illness which led to the conduct which in turn led to his death, and to the conclusion that this illness itself did not arise out of or in the course of the employment. But this alone is not sufficient basis for denial of compensation. If an illness which itself is unrelated to the employment is nevertheless aggravated thereby and death is the result then, as we have held, the death is the result of an injury within the meaning of the statute.[2] Hoage v. Employers' Liability Assur. Corp., 1933, 62 App.D.C. 77, 79–80, 64 F.2d 715, 717–18, where the instructive opinion is by Grouer, J., certiorari denied sub nom. Employers' Liability Assurance Corp., Ltd. v. Kerper, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554. See, also, Grain Handling Co. v. McManigal, D.C.W.D.N.Y.1938, 23 F.Supp. 748, 751, affirmed Grain Handling Co. v. Sweeney, 2 Cir., 1939, 102 F.2d 464, certiorari denied, 1939, 308 U.S. 570, 60 S.Ct. 83,

84 L.Ed. 478; Buxton v. W. Horace Williams Co., 1943, 203 La. 261, 13 So.2d 855, aggravation, traceable to injury, of a preexisting neurotic condition; Jacobson v. Department of Labor & Industries, 1950, 37 Wash.2d 444, 224 P.2d 338, aggravation by heat-stroke of pre-existing schizophrenia (dementia praecox). This construction of the statute conforms with the general purpose of compensation laws, their remedial character, and the liberality with which they are construed, doubts being resolved in favor of the employee or his dependent family. Baltimore & Philadelphia Steamboat Co. v. Norton, 1932, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366; Standard Acc. Ins. Co. v. Hoage, 1933, 62 App.D.C. 245, 247, 66 F.2d 275, 277; Fidelity & Casualty Co. of New York v. Burris, 1932, 61 App.D.C. 228, 230, 59 F.2d 1042, 1044; President, etc. of Georgetown College v. Stone, note 2, supra.

 Robinson's conduct demonstrates a sudden change in his condition very soon after his return from a trip in his employment. The question of aggravation thus comes into the case, as was recognized by the Deputy Commissioner. Since the death cannot be said to have resulted from the natural course of an illness the relation of the employment to aggravation of the illness and consequent death must be considered. There was no evidence that such relationship did not exist. None of the doctors so testified.[3] Indeed, the evidence indicates the contrary. There was testimony deceased should have been institu-

2. An employer accepts employees subject to their physical infirmities which render them more susceptible to injury than a healthy person. President, etc. of Georgetown College v. Stone, 1932, 61 App.D.C. 200, 202, 59 F.2d 875, 877, where it is said "* * * 'The protection of the statute is not limited to employees who are in good health.'" Southern Shipping Co. v. Lawson, D.C. S.D.Fla.1933, 5 F.Supp. 321, 324; Grain Handling Co. v. McManigal, infra.

3. One did testify that deceased's condition could have been due to three factors, an acute paranoia, a paranoia secondary to schizoid personality, or a paranoia due to toxicity or to infection, such as alcoholism or syphilis, and that such patients suffered from hallucinations; that he would say he was suffering from acute paranoia the cause of which was not certain, "but in the absence of a history of trauma I would say it was not associated with his work." A few moments later, however, he reverted to the matter and said that of the three probable or possible causes mentioned by him it would be purely a guess to say which was the most likely; that the best he could do was to say that it was probably the result of one of the three factors mentioned. This testimony therefore would not support a finding that the illness itself was due to an acute paranoia not associated with his work, much less that it was not aggravated or agitated by his work.

tionalized for examination as to some involvement of the central nervous system due to lues; that on the day of his death he was agitated, fearful, and confused; that he had been on a sixteen hour tour of work, "a long trip" as Mr. Reese described it, having reported at 8 a. m. and returned after midnight; that on the previous day he had told another of threats against him, that he had been told to take the truck back to Washington or it would be too bad for him; that he was disoriented; that fear coupled with fatigue could produce a hysterical or highly nervous condition; that perhaps fear or an attack was the precipitating cause; that he was probably suffering a hysterical reaction from fear or possibly from some bodily injury.

Even if this evidence standing alone did not necessitate a finding of aggravation of the underlying illness, attributable to the employment, the statute itself, in this state of the evidence, required a conclusion to that effect. It provides:

"* * * in the absence of substantial evidence to the contrary · * * *" it shall be presumed

"* * * That the claim comes within the provisions [of the Act]. * * *" 44 Stat. 1436 (1927), 33 U.S.C.A. § 920(a).[4]

■ It is held, as we have seen, that when death in the course of employment results from an aggravation, caused by the employment, of a pre-existing illness, it is compensable under the statute. We think it follows that the statutory presumption brings the death within the Act when it results in the course of employment from an illness which has taken a sudden and unusual turn for the worse, not shown by substantial evidence to be unrelated to the employment.

In Del Vecchio v. Bowers, 1935, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, in a case involving the presumption that injury was not occasioned by the willful intention of the employee to kill himself,[5] the Court, though finding the presumption overcome by substantial evidence, stated the rule as follows:

"The act * * * does not leave the matter to be determined by the general principles of law, but announces its own rule, to the effect that the claimant, in the absence of substantial evidence to the contrary, shall have the benefit of the presumption of accidental death. * * *" 296 U.S. at page 286, 56 S. Ct. at page 193.

In our own court the presumption has been partially relied upon in several cases, not limited to the question of jurisdiction. Hartford Accident & Indemnity Co. v. Cardillo, 1940, 72 App.D.C. 52, 54, 58, 112 F.2d 11, 13, 17, certiorari denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415; Maryland Casualty Co. v. Cardillo, 1939, 71 App.D.C. 160, 107 F.2d 959; New Amsterdam Casualty Co. v. Hoage, 1932, 61 App.D.C. 306, 307, 62 F.2d 468, 469, certiorari denied, 1933, 288 U.S. 608, 53 S.Ct. 400, 77 L.Ed. 982. See, also, Marra Bros. v. Cardillo, 3 Cir., 1946, 154 F.2d 357, 359, where in the absence of evidence as to the circumstances surrounding death the court said of the provisions of the basic Act relative to the presumption:

"* * * The language of the section was designed to meet just such fact situations as the one presently before us. We conclude that if it be proved as here that the decedent was employed as a longshoreman and that he met his death in or about a vessel on

4. That the presumption applies to proceedings under the District of Columbia provisions, see Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 474, 67 S.Ct. 801, 91 L.Ed. 1028, where the reference to the presumption was with respect to jurisdiction.

5. "In any proceeding for the enforce-

ment of a claim for compensation * * * it shall be presumed, in the absence of substantial evidence to the contrary * * * (d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another." § 20(d), 44 Stat. 1436 (1927), 33 U.S.C.A. § 920(d).

the navigable waters of the United States and that nothing more is shown, the Deputy Commissioner must hold that his widow's claim is within the purview of the statute."[6]

While under settled principles the weight and deference to be given to the findings of the Deputy Commissioner, and of the court below, ordinarily require approval of their factual findings and the legal consequences attendant thereupon, nevertheless, when convinced that the evidence, with the statute, requires a different result we must not refuse a remedy. Fidelity & Casualty Co. of New York v. Burris, supra. We are of opinion the failure to make an award resulted from a misapplication of the statute to the factual situation. The death resulted from circumstances which the evidence indicates were directly traceable to the aggravation, in the course of employment, of an illness. There was no substantial evidence that such aggravation was not due to the employment, and since, also, it occurred in its course it must be presumed to have arisen therefrom. Otherwise there is a failure to give effect to the statutory presumption. Furthermore, the finding inconsistent with this presumption is inconsistent also with the evidence. The order of the District Court will be reversed and the cause remanded for entry of a decree requiring the appropriate award to be made.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, dissents.

6. Since the evidence does not support a finding of absence of aggravation by the employment, and since the presumption and evidence require the contrary conclusion, it follows that the death arose out of and in the course of the employment. But we point out also that when deceased met his death he was in and about Wakefield on his employer's business, was subject to his instructions, and was on continuous duty. "* * * Workmen's compensation is not confined by common-law conceptions of scope of employment. Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 481 [67 S.Ct. 801, 808, 91 L.Ed. 1028]; Matter of Waters v. Taylor Co., 218 N.Y. 248, 251, 112 N.E. 727, 728. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Thom v. Sinclair, [1917] A.C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose. Ibid. * * *" O'Leary v. Brown-Pacific-Maxon, 340 U.S. at pages 506–507, 71 S.Ct. 470, 471, 95 L.Ed. 483.