Maebell STEELE, Individually, and as mother and next friend of Michael Stephen Steele, minor, and as next friend of Sheila Marie Steele, minor, Plaintiffs,

v.

Herman ADLER, Deputy Commissioner, United States Employees' Compensation Commission, District of Columbia Compensation District, Defendant,

Beth Sholom Congregation and
Talmud Torah

and

Aetna Casualty & Surety Co., Intervening Defendants.

Civ. No. 627-65.

United States District Court
District of Columbia.

April 25, 1967.

David Applestein, Washington, D. C., for plaintiffs.

George M. Lilly, Washington, D. C., of the bar of the Supreme Court of North Carolina, admitted *pro hac vice* for the purposes of this case, and Ellen Lee Park, Asst. U. S. Atty., Washington, D. C., for defendant Herman Adler.

M. S. Mazzuchi, Washington, D. C., for intervening defendants.

## OPINION

GASCH, District Judge.

On March 3, 1966, this Court ordered that a Compensation Order of February 18, 1965, issued by the defendant Deputy Commissioner, which rejected a claim for death benefits in Case No. 14413–3, be vacated and set aside.[1] The Court remanded the case to the Deputy Commissioner for further consideration "in line with the opinion of this Court and the opinion of the Court of Appeals in Howell v. Einbinder [121 U.S.App. D.C. 312], 350 F.2d 442 (1965)."

On remand, the Deputy Commissioner reiterated and in effect reaffirmed his previous decision, whereupon the complainants renewed their motion for summary judgment.

The Court has reviewed the record again and has concluded that the complainants' motion for summary judgment should be granted for the reasons set forth below. The case is remanded to the Deputy Commissioner with instructions to enter an order granting compensation to complainants, the widow and children of William O. Steele.

The facts of the case as shown by the record are as follows: On the evening of Saturday, November 18, 1961, sometime between the hours of 6:00 and 9:00 P. M., William O. Steele was working at his regular employment as a custodian for Beth Sholom Congregation, Washington, D. C. He and a fellow employee, James O'Frank Burney, were setting up tables and chairs in a hall of the Synagogue in preparation for a meeting which was to be held there. The tables were round, had collapsible legs, and weighed approximately fifty pounds each. The usual procedure for setting them up was to roll them to appropriate places on the floor, snap out the legs, then put them in an upright position. However, Mr. Burney testified that the men sometimes put them up first, then put them in the desired locations by pushing them across the floor. It was while he was pushing a table across the floor that William O. Steele suddenly complained to Burney that he had a severe pain in his lower abdomen. He

---

1. The claim for death benefits was filed under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 (1927), as amended, 33 U.S.C. §§ 901 to 950, made applicable to the District of Columbia by the Act of May 17, 1928, 45 Stat. 600 (1928), D.C.Code §§ 36–501 to 36–502 (1961 ed.).

leaned across the table he had been pushing and, when the pain did not subside, he left the hall to rest in a small room set aside for the employees. His pains continued and he went home, arriving there at about 9:30 P. M., according to the testimony of his wife. He went to his bedroom, sat on the edge of the bed, and showed his wife a mass that had appeared on the left side of his abdomen. At about 2:30 A. M. on the following morning, Steele took a taxi by himself and went to the emergency room of Freedman's Hospital for medical treatment. The emergency room admittance records in evidence show that Steele at that time had an incarcerated left inguinal hernia which was thought to be irreducible. He was admitted to the hospital and transferred to a ward at 5:30 A. M. on November 19, 1961. The nursing records, also in evidence, show that at that time he had an incarcerated left inguinal hernia.

At unspecified times on November 19th, an intern and an assistant resident made separate examinations of Steele. Each of these doctors tentatively diagnosed the ailment of Steele as "acute edematous pancreatitis," a diagnosis which later proved to be false. Both doctors saw and noted the hernia. The intern also tentatively diagnosed peptic ulcer because of the patient's past history of ulcer disease. The assistant resident, on the other hand, diagnosed perforation of peptic ulcer and alcoholic gastritis.

Two years earlier William O. Steele had been in the same hospital for treatment of an ulcer. He had been under the care of his physician, a general surgeon who subsequently attended him in 1961. The treatment of the ulcer consisted of rest and diet. Steele was cautioned to avoid drinking alcoholic beverages, but the evidence is undisputed that he continued to drink. In fact, on the afternoon of November 18, 1961, before having dinner at home with Mrs. Steele, Mr. Steele and James O'Frank Burney had shared a pint of whiskey and watched television at Steele's house. However, there is nothing in the record to indicate that these drinks caused Steele to have any illness or discomfort.

Steele's own physician was called in again when Steele was admitted to the hospital with hernia. He recommended that the hernia be surgically repaired. Because of his knowledge that Steele had an ulcer condition two years earlier, the doctor also recommended that Steele submit to a subtotal gastrectomy, that is, surgical removal of three-fourths of the stomach.

Steele consented to the recommended surgery and both operations were performed at one "sitting," although two separate incisions were required. The subtotal gastrectomy was performed first, followed by the hernia repair.

The pathologist's report of the tissue examination of the portion of Steele's stomach removed during the subtotal gastrectomy is in evidence. It shows that William O. Steele did not have an ulcer at the time the surgery was performed. The pathologist's impression following his examination of the stomach tissues was that Steele had "superficial chronic gastritis, non-specific."

Following surgery, the patient showed signs of making a good recovery. He had been ambulatory for a few days when, on the seventh day following surgery, December 13, 1961, he collapsed in a bathroom of the hospital. Concerted efforts by the hospital staff to revive him and save his life failed.

An autopsy, the records of which are in evidence, indicated that the immediate cause of Mr. Steele's death was a pulmonary embolus. The origin of this embolus was not definitely ascertained by the autopsy, but medical experts at the hearing testified that such emboli often originate in the lower limbs and are due to changes in blood condition and circulation following surgery. One of the medical witnesses at the hearing, a witness for the intervenor insurance company, testified that there is a greater probability that emboli will occur following subtotal gastrectomies than following hernia repairs. On the basis of that testimony, the Deputy Commis-

sioner found that the cause of the embolus which was the proximate cause of the death of William O. Steele was the subtotal gastrectomy, which was necessitated by Steele's ulcer, which in turn was caused by Steele's drinking, and that therefore his death was not the result of a work-related injury.

■■■ I hold first that this conclusion is in error as a matter of law. Reliance on mere hypothetical probabilities in rejecting a claim is contrary to the presumption created by the Act[2] that

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of this chapter."

What the Act calls for is facts, not speculation, to overcome the presumption of compensability. The medical witness who testified as to probabilities had not even examined Mr. Steele. It is conceivable that the pulmonary embolus might have been attributable to some cause unrelated to *either* surgery; on the other hand, it might have been attributable to both equally; or it might have been attributable to the hernia repair alone. What the record does clearly show is that Steele at the time of his death was recovering from surgery for the repair of a work-related hernia.

■ The Examiner's conclusion is also contrary to the case law in this jurisdiction[3] and in the Supreme Court[4] which holds that the Act "must be liberally construed in conformance with its purpose".[5]

As the Supreme Court said in Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366 (1932),

"Such laws operate to relieve persons suffering such misfortunes of a part of the burden and to distribute it to the industries and mediately to those served by them. They are deemed to be in the public interest and should be construed liberally in furtherance of the purpose for which they were enacted and, if possible, so as to avoid incongrous or harsh results."

It is undisputed that Steele went to the hospital on November 19, 1961, for treatment of a hernia; it is undisputed that the hernia was surgically repaired and that the condition of the hernia sac showed that it was of recent origin; nor is it disputed that at the time Steele entered the hospital with a hernia he was *not* suffering from an active ulcer condition.

■■ It is not the intention of the Court to suggest that the stomach surgery performed on William O. Steele was unnecessary or ill-advised, for that is not at issue in the case. It is only

---

2. 33 U.S.C. § 920. Butler v. District Parking Management Co., 124 U.S.App. D.C. 195, 363 F.2d 682 (1966); Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 206 F.2d 435, cert. denied 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953). See also O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); Travelers Insurance Co. v. Donovan, 95 U.S.App. D.C. 331, 221 F.2d 886 (1955).

In any event, doubts, including the factual, must be resolved in favor of the employee or his dependent family. Howell v. Einbinder, 121 U.S.App.D.C. 312, 350 F. 2d 442 (1965); Friend v. Britton, 95 U.S.App.D.C. 139, 220 F.2d 820, cert. denied Harry Alexander, Inc. v. Friend, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955); Robinson v. Bradshaw, 92 U.S.

App.D.C. 216, 206 F.2d 435, cert. denied 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953); Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 59 F. 2d 1042(1932).

3. Howell v. Einbinder, 121 U.S.App.D.C. 312, 350 F.2d 442 (1965); Hancock v. Einbinder, 114 U.S.App.D.C. 67, 310 F.2d 872 (1962); Phoenix Assurance Co. of New York v. Britton, 110 U.S.App.D.C. 118, 289 F.2d 784 (1961); Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 59 F.2d 1042 (1932).

4. Voris v. Eikel, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953); Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366 (1932).

5. Voris v. Eikel, 346 U.S. 328, 333, 74 S. Ct. 88, 92, 98 L.Ed. 5 (1953).

necessary to point out that at the time Mr. Steele entered the hospital, and at the time the surgery was performed, the only actual known ailment he had was a left inguinal hernia and that this condition was related to his employment.[6] It was for this work-related hernia that Mr. Steele sought and obtained emergency hospital treatment[7] and it was during the course of his hospitalization that he died.

In addition to the foregoing grounds for reversing the Deputy Commissioner's decision, the Court also concludes that the record does not contain substantial evidence in support of the Deputy Commissioner's findings and that in certain respects his findings are contrary to the record.[8] Crucial to his rejection of the claim is Finding Nine, which states, in part

"that the left inguinal hernia sustained by the employee was the result of abnormal intra-abdominal pressure produced by the repeated episodes of intense vomiting which started in the early evening of November 18, 1961; that neither the chronic duodenal ulcer, gastritis (inflammation of the stomach) nor the hernia was caused or materially aggravated by the employment; that the intense vomiting

was the result of the irritation of the ulcer and stomach, which was produced by the ingestion of alcohol; that the employee did not sustain a left inguinal hernia as a result of a lifting incident while at work for the employer on November 18, 1961; that the claimant did not sustain an injury arising out of and in the course of the employment;"

This finding is without evidentiary support in the record, let alone the kind of substantial support that would be necessary to sustain it. There was medical testimony to the effect that intense vomiting *could* create intra-abdominal pressure that *might* cause a hernia; but this was hypothetical testimony. There was no factual evidence whatever that this is what occurred on the evening in question to William O. Steele. On the contrary, Steele's fellow employee, who was with him all afternoon at home, who went with him to work, and who observed him when he first complained of pains, testified that Steele did not complain of any illness prior to the pain which occurred while he was pushing a table across the floor in the hall of the Synagogue. Both medical witnesses testified that the occurrence of pain in the abdominal region prior either to the appearance of a mass or vomiting would be consistent with the

---

6. A work-related injury is compensable when it results from the performance by the employee of his usual and ordinary work. Hancock v. Einbinder, 114 U.S. App.D.C. 67, 310 F.2d 872 (1962); Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, cert. denied 310 U.S. 649, 60 S.Ct. 1100, 84 L. Ed. 1415 (1940).

7. The Deputy Commissioner makes an issue of Steele's failure to formally apply to the employer for workmen's compensation benefits while he was living. However, the emergency nature of his hospitalization made such formal notice unnecessary and, indeed, impossible. It is sufficient that the employer had actual knowledge of his illness and confinement in the hospital. Voris v. Eikel, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953); Butler v. District Parking Management Co., 124 U.S.App.D.C. 195, 363 F.2d 682 (1966). Further, Steele had hospitalization insurance which in any event would

have covered his hospital bill. Finally, the employer admitted that Steele called him to ask for financial assistance while he was in the hospital, which was denied him on the ground that there were no funds available to pay him.

8. The Deputy Commissioner's findings are to be accepted if they are supported by substantial evidence on the record as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); J. V. Vozzolo, Inc. v. Britton, D.C.Cir., 377 F.2d 144 (February 14, 1967). But this does not mean that findings unsupported by substantial evidence may not be set aside. Howell v. Einbinder, 121 U.S.App.D.C. 312, 350 F.2d 442 (1965); Hancock v. Einbinder, 114 U.S. App.D.C. 67, 310 F.2d 872 (1962); Phoenix Assurance Co. of New York v. Britton, 110 U.S.App.D.C. 118, 289 F.2d 784 (1961); Fidelity & Casualty Co. of New York v. Burris, 61 App.D.C. 228, 59 F.2d 1042 (1932).

occurrence of a hernia caused by physical strain. Only if vomiting occurs first would there be indication that the hernia was caused by intra-abdominal pressures resulting from intense vomiting. The testimony was that Steele complained of severe pain first. That, together with the fact that Steele did not have an ulcer at the time, but only "superficial chronic gastritis," gave the Deputy Commissioner absolutely no basis in the record for this finding.

For the foregoing reasons, the plaintiffs' motion for summary judgment is granted, and the motions for summary judgment made by defendant Deputy Commissioner and intervening defendants Aetna Casualty & Surety Co. and Beth Sholom Congregation and Talmud Torah are denied.