**MAHER TERMINALS, INC., Petitioner**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, United States Department of Labor, Respondent**

**Pasqualina Santoro, Respondent.**

No. 92–3222.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1993.

Decided April 19, 1993.

District of Columbia reimburse the VA under Medicare supplemental policies.

Joseph T. Stearns (argued), Kenny & Stearns, New York City, for petitioner.

Philip J. Rooney (argued), Israel, Adler, Ronca, & Gucciardo, New York City, for widow-respondent.

Marshall J. Breger, Sol., Carol A. De Deo, Associate Sol., Janet R. Dunlop, for Longshore.

Michael S. Hertzig, U.S. Dept. of Labor, Office of the Sol., Washington, DC (argued), for Director, OWCP.

Before: HUTCHINSON, SCIRICA, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

We recently had before us the question of whether the "true doubt" rule could properly be applied in the resolution of a claim for benefits under the Black Lung Benefits Act. We concluded it could not. *Greenwich Collieries v. Director, OWCP*, 990 F.2d 730 (3d Cir.1993). This petition for review of a decision of the Director, Office of Workers' Compensation Programs, raises a comparable question relating to the claimant's burden of proof in cases involving the Longshore and Harbor Workers' Compensation Act (Act), as amended, 33 U.S.C. §§ 901–45 (1988). The ALJ in the present case used the true doubt rule, which calls for the resolution of all true doubts in favor of the claimant, to award benefits to the claimant under the Act despite evidentiary equipoise. The issue in this case is whether the Administrative Procedure Act (APA), 5 U.S.C. §§ 501 *et seq.* (1988) prohibits the application of the true doubt rule in cases involving the Act.

This proceeding originated when Pasqualina Santoro (Mrs. Santoro), the widow of the late Michael Santoro (decedent), filed a claim under section 9 of the Act against Maher Terminals, Inc. (Maher), for temporary total disability benefits due the decedent during his lifetime and death benefits on account of his injury and death. *See* 33 U.S.C. §§ 908(b), 909.

Following a hearing, at which the parties vigorously contested whether the disability and death were work-related, the Administrative Law Judge (ALJ) found the evidence on the question evenly balanced and resolved

his doubts in favor of the claimant. He awarded benefits and denied a motion for reconsideration. The petitioner, Maher, appealed to the Benefits Review Board (Board) of the United States Department of Labor, which sustained the ALJ in an unpublished decision. It then timely appealed to this court. We vacate the Board's order and remand the case for further consideration consistent with this opinion.[1]

## I. FACTS

Because this appeal turns on an interpretation of a narrow question of law, i.e., whether the true doubt rule, as utilized in this case under the Act, contravenes the APA, there is no need to embark on a rendition of the voluminous medical and factual details which are involved in this litigation. We recite only those facts necessary to gain insight into the underlying issues of this appeal.

On July 23, 1985, the decedent, who was then 62 years old, reported an accidental injury while employed by Maher at Port Elizabeth, New Jersey. The claimant testified that on that day, the decedent was driving a vehicle off of a ship at Maher's port. Then, in order to avoid a shackle that was swinging towards him, the decedent threw his body to the right and jerked the back of his neck.

The next day, the decedent visited Dr. Visconti, who diagnosed the injury as a strain of the right and left trapezius muscles. The doctor released the decedent to return to work on July 31, 1985. The decedent returned to work on August 1 for four hours in the employ of International Terminal Operating Company and on August 2 for one full day in the employ of Maersk Container Service Company. On August 3, the decedent and his wife began a long-scheduled vacation to the New Jersey shore, which Dr. Visconti had approved.

During his vacation, the decedent began to experience numbness in the fingers of his left hand, as well as continuing shoulder and neck pain, prompting him to visit Dr. Greifinger, an orthopedic surgeon. Dr. Greifinger reported a diagnosis of cervical strain on a preexisting spondylosis.

The decedent continued his vacation, but called Dr. Visconti on August 14 concerning increased neck and shoulder pain, as well as a new pain in the left arm. Dr. Visconti advised him to go to the hospital for a heart examination, which the decedent did. Finding nothing wrong with his heart, the doctors at the hospital released the decedent, counseling him to wear a neck brace and to take medication. His wife testified that the next day her husband was unable to get out of bed because of numbness in his left arm. Thereupon, he was admitted to a hospital at Point Pleasant, New Jersey.

At the hospital, Dr. Weinstein, following a physical examination and myelogram, diagnosed the patient's condition as a cervical thoracic root avulsion and cervical thoracic myelopathy, and he recommended further testing. On August 18, 1985, Dr. David Yazdan, a neurosurgeon, examined the decedent, and Dr. Yazdan suspected a possible intramedullary tumor or a cystic formation within the spinal cord and recommended immediate surgery. Upon operating on the decedent the next day, Dr. Yazdan found a tumor on the spinal cord, which he identified as an astrocytoma. Subsequently, Santoro was transferred to the Veterans Administration Hospital at Orange, New Jersey, where he died in March 1986.

## II. STATUTORY BACKGROUND

Our review of questions of legal interpretation is plenary. *See, e.g., Carozza v. United States Steel Corp.*, 727 F.2d 74, 77 (3d Cir. 1984).

In bringing a claim pursuant to the Act, the claimant bears the initial burden of production, i.e., to establish a *prima facie* case that he suffered an injury and that employment conditions were sufficient to cause the injury. A failure to carry this initial burden defeats the claim. If the claimant establishes a *prima facie* case, then he or she is entitled to a rebuttable presumption under

---

1. This court exercises jurisdiction over a final order of the Board for an injury which occurred within this circuit pursuant to section 21(c) of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 921(c).

the Act that the injury was work-related and thus compensable. If the employer successfully rebuts the presumption, the factfinder must resolve the factual dispute on the basis of the evidence as a whole. *Del Vecchio v. Bowers,* 296 U.S. 280, 286–87, 56 S.Ct. 190, 193, 80 L.Ed. 229 (1935).

The problem in many cases, as in this proceeding, is that the factfinder finds the evidence so close that he or she is beset by grave doubt as to the critical issue. Some courts have held that, when considering the evidence on the record as a whole, the judge may resort to the true doubt rule:

> "[T]he factfinder operates under the statutory policy that all doubtful fact questions are to be resolved in favor of the injured employee because the intent of the statute is to place the burden of possible error on those best able to bear it." *Noble Drilling Co. v. Drake,* 795 F.2d 478, 481 (5th Cir. 1986). *In effect, the statute eases the ordinary preponderance of the evidence standard applicable in most civil suits. Id.*

*Avondale Shipyards, Inc. v. Kennel,* 914 F.2d 88, 90–91 (5th Cir.1990) (emphasis added); *see also Fidelity & Casualty Co. v. Burris,* 59 F.2d 1042, 1044 (D.C.Cir.1932) ("Where there is doubt, it should be resolved in favor of the injured employee or his dependent family."); *Parsons Corp. of Cal. v. Director, OWCP, U.S. Dep't of Labor,* 619 F.2d 38, 41 (9th Cir.1980); *Bath Iron Works Corp. v. White,* 584 F.2d 569, 574 (1st Cir. 1978); *Freeman United Coal Mining Co. v. OWCP,* 988 F.2d 706 (7th Cir.1993).

The genesis of the true doubt rule is found in *Burris,* 59 F.2d at 1044:

> The underlying purpose of all compensation laws is to provide money indemnity in case of injury where there is no assignable fault. Accidents in industry are inevitable, and the enactment of compensation laws grew out of a general recognition of a duty owing by society to an injured employee to secure him protection, and this the act seeks to accomplish through the means of insurance built up by premiums paid by employers. Where there is doubt it should

be resolved in favor of the injured employee or his dependent family.

The court in *Burris* offered no analytical basis for the true doubt rule. The court properly noted that the compensation laws have their root in society's recognition of a duty to protect injured employees, but the court's leap to the conclusion that this justifies the abandonment or alteration of the claimant's burden of persuasion has no logical basis in the law. Nonetheless, the true doubt rule has become a convenient tool for some courts and administrative agencies to allocate the ultimate burden of persuasion, i.e., to allocate the risk of non-persuasion, to the employer on the theory that it is the party best able to bear that risk.

In the instant case, the ALJ's opinion explained his finding that Mrs. Santoro had established a *prima facie* case and, further, that Maher had successfully rebutted the section 920(a) presumption. As a result, the precedent in *Bowers* mandates that the ALJ evaluate all of the evidence on the record, without regard to the statutory presumption:

> Once the employer has carried his burden by offering testimony sufficient to justify a finding [that the death was not work-related], the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence.

*Del Vecchio,* 296 U.S. at 286, 56 S.Ct. at 193.

Contrary to Maher's assertions,[2] the ALJ adhered to *Bowers* precisely, stating:

> Therefore, the Employer having indicated another cause for, and having severed the possible connection between the claimant's total disability and death, the presumption is deemed overcome and the case is decided on the basis of the record as a whole.

In evaluating the evidence on the record as a whole, however, the ALJ ultimately did apply the true doubt rule. He found that the evidence was in equipoise and then summarily resolved the doubt in favor of the claimant:

---

**2.** Maher argues extensively about the merits of the presumption and its use as affirmative evidence in its brief. Because the ALJ did not actually make use of the presumption in this case, there is no need to address these arguments.

In view of this record, acceptance of the employer's position would be inconsistent with the purposes and policy of the Act. The issue of causality is still deemed to be debatable, but the doubt is resolved in favor of the Claimant.

## III. DISCUSSION

■ Section 19(d) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 919(d), requires that any hearing under the Act be conducted in accordance with the provisions of section 554 of the APA. In *Greenwich Collieries*, we held that the true doubt rule was inconsistent with the APA in cases involving the Black Lung Benefits Act.

Addressing the claimant's ultimate burden of persuasion under the Act involved in the case *sub judice*, the first sentence of section 7(c) of the APA provides:

Except as otherwise provided by statute, the proponent of a rule or order has the burden of proofs.

5 U.S.C. § 556(d).

The third sentence of that section continues:

A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence.

*Id.*

The language of the statute, therefore, informs us that, unless superseded by statute, the APA requires that the claimant bear the burden of proof.[3] It is unfortunate that the etymology of the phrase "burden of proof" has so developed that it can be used to mean solely the burden of persuasion, solely the burden of producing evidence, or both. *Greenwich Collieries*, 990 F.2d at 734.

As we observed in *Greenwich Collieries*, some of the confusion surrounding the phrase "burden of proof" has been addressed by the Supreme Court. In *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), the employer asserted that the General Counsel, as the proponent of an order that the employer had committed unfair labor practices, must bear the burden of proof under section 7(c) of the APA. The General Counsel did not dispute that it bore the burden of persuasion with respect to the *prima facie* case regarding unfair labor practices, but it asserted that it should not shoulder the burden of persuasion regarding an affirmative defense that was available to the employer. The Supreme Court stated in *dicta*, "Section 7(c), however, determines only the burden of going forward, not the burden of persuasion." *Transportation Management*, 462 U.S. at 403 n. 7, 103 S.Ct. at 2475 n. 7.

■ Two years earlier, however, the Supreme Court stated, "The language of [section 7(c) of the APA] itself implies the enactment of a standard of proof, and that standard of proof is the preponderance of the evidence standard." *Steadman v. SEC*, 450 U.S. 91, 98, 102, 101 S.Ct. 999, 1006, 1008, 67 L.Ed.2d 69 (1981). Therefore, *Steadman*, in conjunction with section 7(c), teaches that the third sentence of section 7(c) means that a sanction may not be imposed or rule or order issued unless the proponent of the sanction, rule, or order proves his or her case by a preponderance of the evidence.

Facially, *Steadman* and *Transportation Management* may appear irreconcilable. However, there are two reasons why our holding today that the third sentence of section 7(c) places the burden of persuasion upon the claimant is consistent with both Supreme Court precedents.

First, in *Transportation Management*, only the first sentence of section 7(c) was at issue, and therefore the Court did not consider the meaning of the third sentence of that section. In that case, the respondent argued

---

3. Section 12 of the APA allows for the APA's authority to be superseded by express provisions in statutes. This means that an express statutory provision, such as the section 920 presumption in the Act, would override the rules set forth in the APA. However, none of the following amount to *express statutory* provisions having the authority to supersede the APA on the issue of the degree of evidence which will satisfy the burden of persuasion: the legislative history to the Act, which enunciates its humanitarian and remedial purpose, longstanding use of the true doubt rule by the Board, judicial acceptance of the rule, or Congressional inaction.

that the first sentence of section 7(c), which states that the proponent of an order shall have the burden of proof, means that the claimant bears the burden of persuasion. The Court disagreed, stating:

Section 7(c) of the [APA] provides that the proponent of an order has the burden of proof.... Section 7(c), however, determines only the burden of going forward, not the burden of persuasion.

*Transportation Management*, 462 U.S. at 404 n. 7, 103 S.Ct. at 2475 n. 7.

Although the Court appears to have expansively stated that section 7(c) as a whole applies merely to the burden of production, the Court's interpretation of the substance of section 7(c), albeit in a footnote and in *dicta*, was limited to the first sentence. *See id.* ("Section 7(c) of the [APA] provides that the proponent of an order has the burden of proof."). Thus the Court's own language, which it quoted from the first sentence of section 7(c), evinces that the only portion of section 7(c) with which it was grappling was the first sentence. This analysis is supported by the absence of any reference by the Court in *Transportation Management* to its decision in *Steadman*.

Moreover, in *Environmental Defense Fund, Inc. v. E.P.A.*, 548 F.2d 998, 1004, 1013–1015 (1976), *cert. denied sub nom. Velsicol Chem. Corp. v. E.P.A.*, 431 U.S. 925, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977), upon which the *Transportation Management* Court relied in reaching its conclusion regarding section 7(c), the court dealt only with the first sentence of section 7(c). There, the court announced that although the APA stated that "except as otherwise provided by statute, the proponent of a rule or order shall have the burden of proof," *Id.* at 1004, "the 'burden of proof' [the APA] casts upon the 'proponent' is the burden of coming forward with proof, not the ultimate burden of persuasion." *Id.* at 1013. Therefore, the Supreme Court's *dicta* stating that section 7(c) is limited to the burden of production was an analysis only of the first sentence of that section.

In contrast, in *Steadman*, the Court specifically addressed the third sentence of section 7(c). The Court there stated that the third

sentence of section 7(c) means that the standard of proof necessary to carry the burden of persuasion under the APA is the preponderance of the evidence standard. Therefore, *Steadman*, standing alone, does not allocate the burden of persuasion, but rather defines its scope as a preponderance of the evidence. It may be suggested that the APA goes no further than this and fails to allocate the burden of persuasion, which gives each administrative agency the discretion to do so without contravening the APA, provided that the party to whom it allocates the burden proves its case by a preponderance of the evidence.

The APA, however, does indeed allocate the burden of persuasion. The language of the APA, coupled with that of *Steadman*, teaches that a sanction may not be imposed, or rule or order issued, except on a preponderance of the evidence. It is typically the claimant who strives to have a rule or order issued, and the APA prohibits such an issuance unless the proponent of that rule or order proves his or her case by a preponderance of the evidence. Therefore, it is usually the claimant who bears the burden of proving his or her case by a preponderance of the evidence.

For example, in the case *sub judice*, Mrs. Santoro seeks to have an order issued that she is entitled to benefits under the Act. She seeks to change the status quo. Hence it is she who bears the burden of proving entitlement to benefits by a preponderance of the evidence. Thus, *Steadman*, and not *Transportation Management*, deals with the third sentence of section 7(c), and the former is therefore the more relevant precedent for our purposes today.

We find support for our analysis in the legislative history of section 7(c), which states in part:

That the proponent of a rule or order has the burden of proof means not only that the party initiating the proceeding has the general burden of coming forward with a prima facie case but that other parties, who are proponents of some different result, also for that purpose have a burden to maintain. Similarly the requirement that no sanction be imposed or rule or order be

issued except upon evidence of the kind specified means that the proponents of a denial of relief must sustain such denial by that kind of evidence.

H.R.Rep. No. 1980, 79th Cong., 2d Sess., at 37 (1946) U.S.Code Cong.Serv. 1195. The first sentence above is relied upon to show that the first sentence of section 7(c), which likewise discusses "the burden of proof," refers only to the burden of production, a proposition not presently in dispute. The second sentence above echoes the language of the third sentence of the statute, which has been interpreted as establishing the standard of proof for the burden of persuasion under the APA, i.e., a preponderance of the evidence. *Steadman,* 450 U.S. at 97–102, 101 S.Ct. at 1006–08. The *Steadman* Court's analysis of the statute and its legislative history directly links the statutory requirement that no order shall issue unless "supported by and in accordance with ... substantial evidence" with the preponderance standard.

If no order shall issue except supported by and in accordance with a preponderance of the evidence, the inevitable conclusion is that the proponent of that order must bear the burden of persuasion by a preponderance of the evidence. We concede that the legislative history previously cited, taken together with *Steadman,* suggests that the party who seeks a denial of relief is *also* required by section 7(c) to sustain such denial by a preponderance of the evidence. In practice, however, it is difficult to imagine how this could lead to an interpretation of section 7(c) that allocates the burden of persuasion *solely* to the party who contests the grant of relief. If this is done, and the party contesting the claim for relief does not sustain his or her burden of persuasion because the evidence is found to be in equipoise, an order in favor of the claimant will issue that is not supported by a preponderance of the evidence, a result in clear contravention of the APA.

Nor is it possible for adversarial parties to bear the same burden at the same time on the same issue or issues. The only interpretation of the third sentence of section 7(c), in conjunction with its legislative history, that does not of itself contravene the statute or suggest an impossibility is one which allocates the burden of persuasion to the propo-

nent of the order, i.e., the party initiating the proceeding, on the issues raised by that party, but allows the burden to be shifted to the party opposing the grant of relief as to issues raised by the opponent, e.g., affirmative defenses. *See generally Transportation Management.*

A further reading of the legislative history reinforces this view:

> The first and [third] sentences of the section therefore mean that, where a party having the burden of proceeding has come forward with a *prima facie and substantial* case, he will prevail unless his evidence is discredited or rebutted.... Where there is evidence pro and con, the agency must weigh it and decide *in accordance with the preponderance.*

H.R.Rep. No. 1980, 79th Cong., 2d Sess., at 37 (1946) U.S.Code Cong.Serv. 1195 (emphasis added). As noted earlier, the party initiating the case has the general burden of coming forward with a *prima facie* case, *id.;* we now see that this party, if it meets both its burden of production (*prima facie* ) and burden of persuasion (where "substantial" is construed as standing for the preponderance standard), it will succeed, unless its evidence is unconvincing. Thus, the party initiating the proceeding, i.e., the proponent of the order for relief (the claimant in the present case), has both elements of the burden of proof. Although the burden of producing evidence may be shifted during the progress of a proceeding from one party to the other, the burden of persuasion remains with the proponent of the order for relief, and it cannot be shifted on the issues raised by the proponent.

There is yet a second reason why our holding today is fully consistent with *Transportation Management:* The issue in that case, in contrast to the one *sub judice,* was whether it was permissible under the APA to place the burden of persuasion for an *affirmative defense* upon the employer.

Under the National Labor Relations Act (NLRA), the General Counsel bears the burden of proving by a preponderance of the evidence that antiunion animus contributed to the employer's decision to discharge an

employee. *Transportation Management,* 462 U.S. at 397–99, 103 S.Ct. at 2472–73; 29 U.S.C. § 160(c) (1988). The Board has held that, regardless of whether the General Counsel carries its burden with respect to the underlying claim, the employer can avoid the conclusion that it violated the NLRA by proving by a preponderance of the evidence that the employee would have been discharged for permissible reasons regardless of his involvement in protected union activities. *See, e.g., Transportation Management,* 462 U.S. at 401, 103 S.Ct. at 2474.

The Court of Appeals for the First Circuit held it to be error for the Board to place the burden on the employer to prove that the discharge would have occurred notwithstanding the presence of the forbidden motive. The court reasoned that the General Counsel, as the proponent of the order, had to carry the burden of persuasion both on the underlying claim and on the affirmative defense. The Supreme Court reversed, stating that the General Counsel, as proponent of the order, bears the burden of persuasion with regard to the underlying violation, but that the Board may place the burden of persuasion regarding an affirmative defense upon the employer. *Transportation Management,* 462 U.S. at 404, 103 S.Ct. at 2475.

The facts of *Transportation Management,* therefore, confine it to the following sequitur: Where an affirmative defense is available to the employer, the NLRB may place the burden of persuasion as to this affirmative defense on the employer under the APA. This, of course, is only *after* the claimant has first carried his or her burden of proving the elements of an unfair labor practice.

In sum, the first sentence of section 7(c) places the burden of production on the proponent of the order or rule, i.e., the proponent must go forward with evidence or the case will come to an end. The third sentence of that section establishes the standard for the burden of persuasion, i.e., a preponderance of the evidence, and also allocates the burden of persuasion to the claimant as the proponent of the order or rule. A logical exception to that rule exists, however, when an affirmative defense is raised. In that scenario, the claimant bears the burden of production and persuasion on the subject of the litigation; then, only after the claimant has met this burden, does the defense bear the burden of persuasion on the affirmative defense.

Because the case *sub judice* does not involve an affirmative defense, the burden of production and persuasion both rest upon the claimant, Mrs. Santoro.

■ Moreover, as discussed exhaustively in *Greenwich Collieries,* 990 F.2d at 736–737, the true doubt rule impermissibly allows a claimant to prevail despite having failed to sustain his or her burden of persuasion by a preponderance of the evidence. Therefore, the claimant here is required to prove by a preponderance of the evidence that she was entitled to benefits under the Act. The ALJ found that the evidence was in equipoise, which, by definition, means that the claimant did not carry her burden of proof by a preponderance of the evidence. The finding in her favor, therefore, was error.

■ Although we agree that a compensatory statute such as the Act should be construed liberally in favor of the claimant, *see Pillsbury v. United Eng'g Co.,* 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952), Congress has written certain presumptions into its compensatory statutes which are quite favorable to the claimant. As we recently stated in *Greenwich Collieries,* we believe that these presumptions effectuate the statute's liberal purpose, and the APA simply does not allow us to grant the liberal construction urged by Mrs. Santoro. Although we recognize that the Act should be construed liberally, that does not empower us to rewrite the provisions of the Act, which require the claimant to prove the material allegations of the claim. *Greenwich Collieries,* at 735.

Finally, we address the cases which have upheld the true doubt rule, *see supra* pp. 1279–80, and express our reasons for rejecting them. Most of these opinions that have upheld the true doubt rule, with the exception of *Freeman,* have not seriously considered the applicability of the APA to the question at hand. *See, e.g., Avondale Shipyards,* 914 F.2d 88; *Burris,* 59 F.2d 1042; *Parsons,* 619 F.2d 38; *White,* 584 F.2d 569.

We do not see how the provisions of the APA may be disregarded. The APA is the polestar which guides our course and is the fundament upon which we strike down the ALJ's use of the true doubt rule in this case.

For example, the Fifth Circuit, in upholding the true doubt rule, has observed, "In effect, the [true doubt rule] eases the ordinary preponderance of the evidence standard applicable in most civil suits." *Avondale Shipyards,* 914 F.2d at 90–91. However, as discussed above, the APA does not allow such an arbitrary alleviation of the claimant's burden of proof, a point which that court did not consider.

In *Freeman* the issue was whether the claimant had proven that he suffered from pneumoconiosis. The *Freeman* court itself noted that the Supreme Court has decided in this context that the X ray produced by the claimant may not merely "constitute evidence" of pneumoconiosis, but must show the presence of pneumoconiosis by a preponderance of the evidence. *Freeman,* 988 F.2d at 709 (citing *Mullins Coal Co. v. Director, OWCP, U.S. Dep't of Labor,* 484 U.S. 135, 138, 147–52, 108 S.Ct. 427, 429, 433–37, 98 L.Ed.2d 450).

The *Freeman* court went on to uphold the ALJ's use of the true doubt rule in that case, holding that the rule is consistent with the APA. We believe, however, that this conclusion cannot follow. If a claimant must produce an X ray to prove the presence of pneumoconiosis by a preponderance of the evidence, then use of the true doubt rule is improper because it allows the claimant to prevail despite having failed to meet this burden. *See Greenwich Collieries,* 990 F.2d at 736–737.

## IV. CONCLUSION

In sum, we hold that the APA prohibits application of the true doubt rule to cases involving benefits under the Longshoremen's Harbor Workers' Compensation Act because: (1) under the APA, the claimant bears the ultimate burden of persuasion by a preponderance of the evidence; and (2) the true doubt rule allows a claimant to prevail despite a failure to prove entitlement by a preponderance of the evidence. This contravenes the APA. Because there is no express provision in the Act which overrides the APA, the claimant must prove that her husband's death was related to his work injury by a preponderance of the evidence.

It is not clear, however, if the ALJ in this case ever considered whether the claimant's evidence satisfied the preponderance of the evidence standard. It is possible that, upon reaching the point of equipoise, and believing the true doubt rule to be valid, the ALJ halted his inquiry short of deciding whether Mrs. Santoro's evidence preponderated.

Accordingly, the order of the Benefits Review Board will be vacated with directions to remand the case to the ALJ to make this determination. If the ALJ again concludes that the evidence is in equipoise, then Maher must prevail.