## STANDARD ACC. INS. CO. v. HOAGE, Deputy Com'r, et al.

### No. 5787.

Court of Appeals of the District of Columbia.
Argued June 9, 1933.
Decided June 26, 1933.

Edward S. Brashears, Wilson L. Townsend, and Albert F. Beasley, all of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., John J. Wilson, Asst. U. S. Atty., and Frank B. Hoffman, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree of the lower court dismissing a bill of complaint filed against the Deputy Compensation Commissioner, seeking a mandatory injunction to set aside a certain award of compensation made under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424 (33 USCA c. 18, §§ 901-950), made applicable to the District of Columbia by Act of May 17, 1928, 45 Stat. 600, D. C. Code 1929, T. 19, §§ 11, 12 (33 USCA c. 18, § 901 note).

The suit was brought in the lower court under authority of section 21 (b) of the Act of March 4, 1927, supra (33 USCA § 921 (b), by the Standard Accident Insurance Company as the insurance carrier. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. By agreement of the parties the testimony taken before the deputy commissioner was made part of the record, and no other evidence was submitted in the case. The appeal therefore is before us upon the evidence heard by the deputy commissioner. Georgia Casualty Co. v. Hoage, 61 App. D. C. 195, 59 F.(2d) 870.

The award of the deputy commissioner was based upon his finding that one Opie F. Lindsay was an employee of the Lathers' International Union, Local No. 9, of Washington, D. C., hereinafter called the union, and that he suffered an accident in the course of his employment and arising out of it, which resulted in his death; and that the case was compensable under the statutes above cited.

The appellant as plaintiff below in its bill of complaint contended that upon the undisputed facts established by the record it should be held that at the time of the accident the union was not an employer of Lindsay, and that Lindsay was not an employee thereof, and accordingly that the accident did not occur in the course of such employment. Appellant contended accordingly that the award made by the deputy commissioner was contrary to law, and prayed that it be vacated and set aside. The lower court held against this contention and dismissed the bill of complaint. This appeal was then taken.

The record discloses that on December 15, 1931, Lindsay, while acting as business agent of the union, sustained injuries while returning from Fredericksburg, Va., where he had gone, accompanied by other labor union representatives, to investigate, on behalf of the union, certain charges which had been brought concerning labor conditions in that city. The party was returning homeward in an automobile which came into collision with a pass-

ing motor vehicle, resulting in injuries from which Lindsay died on the same day.

A claim for compensation was thereupon filed by Clara A. Lindsay, widow of the deceased, with the deputy commissioner, and was granted by him as aforesaid.

■ We are of the opinion, upon the facts contained in the record, that the union was an employer, and that Lindsay when he met his death was its employee, within the purview of the compensation statute.

It appears that Lindsay at the time of the accident was the business agent of the union and that his duties were defined by the constitution of the union as follows: "Sec. 13. It shall be the duty of the business agent to visit each and every job, call on the shop steward and ascertain the exact number of members working in each shop, to examine the cards or permits of all members, and to have full authority to call out any member committing an infraction of the constitution and by-laws, and to attend to all other business the union may direct; * * * He shall be elected for a term of 12 months and to act only when called upon or when necessary; upon charges being preferred against him for failing to perform his duties, he shall forfeit his day's pay for each offense and the office declared vacant, and an election held the same night to fill vacancy. He shall be a member, ex officio, of all committees."

It appears that under this authority Lindsay devoted all his time and efforts to the purposes of the union, that he was paid therefor at the rate of $80 per week, that this was his sole occupation and means of support, and that his services were rendered under the control of the union for a term which could be ended by the union at any time because of his failure to perform his duties in a satisfactory manner. This employment was totally distinct from the ordinary duties and powers of members of the union in general. The fact that Lindsay was a member of the union did not prevent him from being likewise an employee for the performance of services such as did not pertain to membership alone, nor was Lindsay compensated for his services otherwise than by the wages paid him therefor. It may be added by way of analogy that it is not inconsistent for officers of corporations to serve at the same time as employees of the corporations. In Goldin v. Goldin Decorating Co. and Royal Indemnity Co., 247 N. Y. 603, 161 N. E. 199, a case arising under the workmen's compensation law of New York, the claimant and two others organized a corporation to engage in the business of paint-

ing and decorating. He was elected vice president and treasurer. He was also employed by the corporation as "inside man" or "supervisor" at a stated salary. While engaged in loading a motortruck with painting supplies he received injuries for which the State Industrial Board awarded compensation. The insurance carrier contended that claimant was not an employee within the meaning of the Workmen's Compensation Law. The compensation award was affirmed. The fact that Lindsay was elected to this position by the union is not inconsistent with the foregoing statements, for plainly such an election was equivalent to an appointment to the designated employment.

We are of the opinion also that the labor union was competent to make a contract with Lindsay for his services as an employee within the provisions of the Compensation Act.

The union is a legal entity and answers to the term "association" as used in the statute. It may be sued as an organization for torts committed by it. United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. It may enter into business contracts of various kinds as an "association." Its purposes relate to the trade and business of wood and metal lathing. Its function is to aid in the carrying on of this trade by its members, who thereby earn their livelihood, by regulating their contracts of employment, securing to them a fair remuneration for their labor, affording them protection against obnoxious rules, unlawful discharge, or other systems of injustice and oppression. This appears from the constitution and by-laws of the union incorporated in the record. These functions constitute the union as an essential part of the employment of its members in the lathing trade. It is no stretch of terms to say that the activities of the union possess the nature of a business and an employment within the sense in which these terms are used by the statute. In the exercise of these functions it was necessary to employ a business agent such as Lindsay to perform the duties which he was engaged in performing at the time of the accident. In 16 Ruling Case Law, § 7, p. 421, it is said: "That the functions of labor unions now cover a wide range is indicated by the fact that in a comparatively recent English statute the term 'trade union' has been defined as any combination, whether temporary or permanent, for regulating the relations between workmen and masters, or between workmen and workmen, or between masters and masters, or for imposing restric-

tive conditions on the conduct of any trade or business. ˟ * * Labor unions frequently fix wage scales and issue notices to employers that the wage scale established by the union is to be the basis of contracts to be made with its members. Workmen have, in some instances, delegated to the labor unions with which they are connected, the right of selecting a superintendent. ˟ * * "

It is true that it has been said in some cases that the purposes of a labor union are generally social and not commercial, but it is well within common knowledge that labor unions in general perform an active and important function in the carrying on of many trades and occupations. It is no stretch of language therefore to say that such an organization is essentially a business organization.

It has been repeatedly observed that the compensation laws are remedial in character, seeking to accomplish a humane purpose, and that their terms should be liberally construed. In Allen-Garcia Co. v. Industrial Commission, 334 Ill. 390, 166 N. E. 78, the Supreme Court of Illinois said that the "definitions of 'employer' and 'employee' in Workmen's Compensation Act should be broadly construed." In Texas Employers' Insurance Association v. City of Tyler, 283 S. W. 929, 932, 933, the Court of Civil Appeals of Texas said that:

"The Workmen's Compensation Act is regarded as a remedial statute, and should be liberally construed. * * * This liberality, we think, should not only be indulged in applying the remedies provided for, but in determining what legal entities may claim the benefit of those remedies."

Moreover, it should be observed that the language employed by Congress in the Act of May 17, 1928, applying the provisions of the Longshoremen's and Harbor Workers' Compensation Act to the District of Columbia is remarkably broad. It provides that the former act "shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term 'employer' shall be held to mean every person carrying on any employment in the District of Columbia, and the term 'employee' shall be held to mean every employee of any such person." Section 1 (33 USCA § 901 note).

The act provides for certain limited exceptions, to wit: (1) A master or member of the crew of any vessel; (2) an employee of a common carrier or railroad when engaged in interstate or foreign commerce, or commerce solely within the District of Columbia; (3) an employee subject to the provisions of an act entitled "An Act To provide compensation for employees of the United States suffering injuries while in the performance of their duties, and for other purposes," approved September 7, 1916 (5 USCA § 751 et seq.); and (4) an employee engaged in agriculture, domestic service, or any employment that is casual and not in the usual course of the trade, business, occupation, or profession of the employer.

None of the exceptions incorporated in the foregoing act applies to the case now in question. This is obvious as to the first three classes of exceptions, and as to the fourth, it appears that the employment in which Lindsay was engaged was not casual but was in the usual course of the trade or business of his employer.

The comprehensive language employed in the foregoing act distinguishes it from many of the compensation enactments in force in the several states, and gives evidence of the purpose of Congress that the law in the District of Columbia in compensation cases shall be broadly construed and applied.

In the present case we think that inasmuch as the insurance carrier insured the labor union for the protection of its employees, among whom the business agent was known to be numbered, and received and retained its compensation for such insurance, it cannot complain if the courts call upon it to perform its contract in the spirit in which it was made.

The appellant also contends that the accident did not happen in the course of or arise out of the employment of Lindsay by the union. It is apparent, however, that this was intended as a mere corollary to the contention that no condition of employment existed between the parties. Inasmuch, however, as we have held to the contrary upon that claim, we find it unnecessary to enter upon a discussion of the last-mentioned contention. The undisputed fact is that Lindsay at the time of the accident was returning to the office of the union for the purpose of reporting upon the errand which had taken him in the union's service to Fredericksburg, Va. The collision which happened and caused Lindsay's death not only happened in the course of his employment but arose out of that employment. New Amsterdam Casualty Co. v. Hoage, 61 App. D. C. 306, 62 F. (2d) 468.

The decision of the lower court is therefore affirmed.