Jeannine ROUMELIOTIS, et al

vs.

Daniel ZENGA, as representative of the membership of AUTOMOTIVE CHAUFFEURS PARTS AND GARAGE EMPLOYEES, Local No. 841

C.A. #4606

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

October 1, 1980

Dennis J. Brennan for the plaintiff.
Robert S. Fijal for the defendant.

## FINDINGS, RULINGS AND ORDER

This is a civil action brought pursuant to G.L. c. 152, §66. Plaintiffs are seeking recovery for the death of Nicholas C. Roumeliotis. Defendants contend that Nicholas C. Roumeliotis was not an employee at the time of his death, his death did not arise out of or in the course of his employment, and that the plaintiffs are not the proper parties to this suit. This case was heard by the court, sitting without a jury, on May 7, 27 and 28, 1980. After careful consideration of all the evidence before it, including oral testimony of witnesses, exhibits, briefs and arguments of counsel, this court makes the following findings, rulings and order.

### I. Findings of Fact

1. The representative defendant, Daniel Zenga, is the Secretary/Treasurer and Business Agent of the Automotive Chauffeurs Parts and Garage Employees, Local #841. (hereinafter the "Local" or the "Union")

2. The defendant, the membership of Local #841, is an unincorporated labor union created pursuant to a Certificate of Affiliation granted by the International

Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, dated December 29, 1949.

3. At the time of his death on February 13, 1974, Nicholas C. Roumeliotis was the Secretary/Treasurer and Business Agent of Local #841.

4. The plaintiff, Jeannine Boucher Roumeliotis, is the widow of Nicholas C. Roumeliotis. They were married on June 29, 1952. The marriage continued until the death of Nicholas. Except for a period of three (3) months early in their marriage, Jeannine Roumeliotis was not employed outside the home. She has not remarried.

5. The plaintiff, Charles Nicholas Roumeliotis, is the son of Nicholas C. and Jeannine Boucher Roumeliotis. He was born on July 16, 1954. At the time of his father's death he was a senior in high school and lived at home with his parents.

6. The plaintiff, Susan Denise Roumeliotis, is the daughter of Nicholas C. and Jeannine Boucher Roumeliotis. She was born on September 22, 1956. At the time of her father's death she was a senior in high school and lived at home with her parents.

7. Nicholas C. Roumeliotis died on February 13, 1974 at 27 Hunting Street, Malden, Massachusetts. The cause of death was multiple gun shot wounds of the neck and face.

8. At all relevant times the members of Local #841 have maintained their principal place of business at 27 Hunting Street, Malden, Massachusetts.

9. Nicholas Roumeliotis was seen at the union place of business, 27 Hunting Street, Malden, Massachusetts, on February 12, 1974 by the union's secretary, Elizabeth McQuarrie. According to Ms. McQuarrie, Mr. Roumeliotis left work that day sometime in the afternoon.

10. On February 12, 1974 Nicholas Roumeliotis told Daniel Zenga, then business agent of the local, that he, Roumeliotis, intended to attend a Joint Council meeting that evening at a hotel in Boston.

11. Representatives of all the New England locals attend the Joint Council meetings. The meetings are held during the evening on the second Tuesday of every month. The Joint Council meets in various hotels in New England.

12. Nicholas Roumeliotis was last seen alive by his brother between 7:30 and 8:30 p.m. on February 12, 1974 at Nicholas' home. At that time Nicholas was dressing to go out for the evening. He informed his brother that he was going to attend the Joint Council meeting.

13. Nicholas Roumeliotis never attended the Joint Council meeting. His body was discovered at approximately 8:00 A.M. on February 13, 1974.

14. Nicholas C. Roumeliotis visited 27 Hunting Street, Malden, Massachusetts after the close of the normal business day on several occasions prior to his death in order to conduct union business.

15. At the time of his death Nicholas C. Roumeliotis was paid a weekly salary by Local #841 of $400, he received free use of a car and was compensated for travel expenses.

16. At the time of his death Nicholas C. Roumeliotis was approximately 44 years of age. He was in good health and had a life expectancy of 29 years.

17. Nicholas C. Roumeliotis' potential earning capacity reduced to present value is $284,000.

18. The members of Local #841 are bound by the constitution adopted by the Miami Beach, Florida Convention, July 5-8, 1971 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter the "International"). The members of the union have not adopted or promulgated any by-laws.

19. The International Brotherhood of Teamsters regulates the affairs of the locals in many respects. For example, any by-laws adopted by a local must be approved by the General President (president of the International) or by the General Executive Board (executive board of the International) [1971 Constitution Art. VI, § 4(a)]. The General President has the authority to determine all grievances and disputes submitted by the local, and failure of the local to abide by the General President's decision may result in the local's suspension from the International, the revocation of its charter or the imposition of Trusteeship by the General President. [Id. at § 2(a), 2(b)].

The General Executive Board may require a local to arbitrate a grievance with an employer. (**Id.** at § 3). In certain instances the General President may appoint after a hearing a temporary trustee to take charge of and control of a local. (**Id.** at § 5). The General Executive Board may order the audit of the books to a local. [**Id.** at Art. VII, § 7(a), Art. X, § 10(a)]. The local must order supplies from the International. [**Id.** at § § 9(a), (b)]. The General Executive Board has the authority to merge local unions. (**Id.** at Art. IX, § 11). The General Executive Board has the authority to levy an assessment on a local in certain circumstances. Failure of a local to pay may result in its suspension. (**Id.** at Art. X, § 2). The General President may submit an employer's final settlement offer to the involved membership upon failure of the local's executive board to do so. The General President or General Executive Board may also conduct a vote on such an offer. [**Id.** at Art. XII, § 1(b)]. The General President's or the General Executive Board's approval is needed for a strike, [**Id.** at § § 1(c), 1(d)], if the local members are to receive out-of-work benefits. (**Id.** at § 3). The amount and payment of out-of-work benefits are regulated by the International. (**Id.** at § § 5, 6). In certain circumstances a proposed employment agreement is not valid unless approved by the General Executive Board. (**Id.** at § 12).

20. The local's elected officers are three Trustees, a Recording Secretary, a Vice President, a President and a Secretary/Treasurer. The Secretary/Treasurer also serves as a Business Agent. These elected officers comprise the Executive Board of the Local. The Executive Board meets approximately once a month.

21. The Secretary/Treasurer-Business Agent is elected for a three year term of office. This is a full time position. The Secretary/Treasurer is the principal elected officer of the Local.

22. The duties of the Secretary/Treasurer are detailed in Article XXIII of the 1971 Constitution. They include: entering all receipts in the name of the Local and depositing all moneys in accordance with specific terms of the Constitution; main-taining a bookkeeping system as prescribed by the General Secretary/Treasurer (Secretary/Treasurer of the International); paying to the General Secretary/Treasurer the initiation fee and per capita tax as prescribed in the Constitution; reporting changes in the Local's mailing list to the General Secretary/Treasurer; forwarding the names of the elected Local officers to the General Secretary/Treasurer in accordance with the system and forms prescribed by the General Secretary/Treasurer; and forwarding copies of all reports filed by the Local with all governmental agencies to the General Secretary/Treasurer.

23. All checks signed by the Secretary/Treasurer must be cosigned by another officer.

24. The Secretary/Treasurer cannot carry any members on the books as exempt from paying dues without a waiver by the General Executive Board of the International.

25. The Secretary/Treasurer appoints the other business agents of the local. In Local #841 there are generally two other business agents.

26. A business agent serves as a full-time, salaried organizer for the Local.

27. The Secretary/Treasurer sets the salaries of the business agents. He also has the authority to remove them from office.

28. The salary of the Secretary/Treasurer is established by the Executive Board.

29. The Executive Board reviews and must approve all financial reports submitted by the Secretary/Treasurer.

30. The Secretary/Treasurer may be removed from office for misconduct (1971 Constitution Art. XIX, Sections 6-13). Charges are initially heard by the Local Union Executive Board, with a right of appeal to the Executive Board of the Joint Council or to the General Executive Board, which is the Executive Board of the International. (1971 Constitution Art. XIX, Sections 1-2).

31. If an incumbent Secretary/Treasurer and Business Agent is not reelected, he may return to his former employer company to resume the job held by him prior to his election.

32. When the employer has gone out of business or in the case where the defeated

Secretary-Treasurer and Business Agent did not rise through the union from or through an employer company he has no further standing with the union.

33. Throughout the history of Local #841 no elected officer has been removed from office for misconduct or has failed to have been reelected. All officers have either died in office or voluntarily retired.

34. In the late 1960's Nicholas Roumeliotis became associated with the Union as an organizer. He was paid partly by this Union and partly by another. Thereafter, in approximately 1968, he was appointed a Business Agent for the Union and paid a salary of approximately $100.00 per week. Nicholas Roumeliotis did not rise through or from an employer company.

35. In June of 1970, he was appointed Secretary/Treasurer and Business Agent by the Executive Board of the Union to fill the unexpired term of the Secretary/ Treasurer and Business Agent who died in office.

36. In 1971 Nicholas Roumeliotis was elected to the office of Secretary/Treasurer and Business Agent and was serving in that capacity on February 13, 1974. As of his death, Nicholas Roumeliotis was earning a salary of $400/week as Secretary/Treasurer-Business Agent. In addition, he received free use of a car and travel expenses.

37. During the elected tenure of Nicholas Roumeliotis, the Union employed a secretary at its place of business in Malden, Massachusetts, namely Elizabeth MacQuarrie.

38. The duties of the secretary were general office duties, such as typing, maintaining payroll records, recording dues and so forth.

39. The secretary took her orders from Nicholas Roumeliotis.

40. During late December, 1973 and early January, 1974, Nicholas Roumeliotis did not appear in the Local office on a daily basis. He did, on occasion, work at the office at night. He primarily worked out of his home during the day and often received calls there on union business.

41. It is undisputed that the Local had not purchased Workmen's Compensation coverage as of February 13, 1974.

42. The Local's "Employee Wage and Expense Record" for the years 1971-1974 were submitted into evidence. In 1971, six employees were listed: Nicholas Roumeliotis (Business Agent, Secretary/Treasurer); Thomas Fitzgerald (Business Agent); Elizabeth MacQuarrie (Secretary); Eleanor Costa (Part-time Secretary) (Oral testimony established her position, it's not listed); Daniel Zenga (Organizer); Edward Walsh (Organizer). In 1972, the same six "employees" were listed, but Daniel Zenga was not listed as Business Agent and President. In 1973, only four "employees" were listed, including Nicholas Roumeliotis, Thomas Fitzgerald, Daniel Zenga and Elizabeth MacQuarrie. In 1974, the "employee wage and expense record" included the same four individuals, with Thomas Fitzgerald taking the position of Secretary/Treasurer after Nicholas Roumeliotis' death.

43. The federal forms 941, entitled "Employer's Quarterly Federal Tax Return" of the Local for the years 1973 and 1974 reveal the following: In 1973, Nicholas Roumeliotis, Thomas Fitzgerald, Daniel Zenga and Elizabeth MacQuarrie were listed as "employees" for the first three quarters, Elizabeth MacQuarrie was the sole "employee" listed in the fourth quarter, and Karen Kerlan was also listed in the second and third quarters. In 1974, Thomas Fitzgerald, Daniel Zenga and Elizabeth MacQuarrie were listed for the first three quarters, Elizabeth MacQuarrie was the sole "employee" listed for the last quarter, and Nicholas Roumeliotis was included in the first quarter listing, which ended March 31, 1974.

44. Elizabeth MacQuarrie filled out both the "employee wage and expense record" and the Form 941.

45. The Local's "Labor Organization Annual Report", which is filed with the United States Department of Labor and the I.R.S., reveals that for the years 1971-1974 Nicholas Roumeliotis was listed under "Disbursements to Officers" and not "Disbursements to Employees". Any other elected official who received payment was also listed under the "Officer" schedule.

46. The above-mentioned annual reports

were prepared by an outside agency based upon information provided by the Local.

## II. Discussion

G.L. c. 152, § 1 defines an employer as "an individual, partnership, **association**, corporation or other legal entity ..." (emphasis added). Defendant does not contend that an unincorporated labor association cannot be deemed an employer in any situation. The above-cited definition clearly makes such an argument untenable. See also 99 Corpus Juris Secundum, § 52 and cases cited therein. In 1972, the Workmen's Compensation Act was made compulsory for employees of employers of only one, two or three persons, whether or not they were engaged in hazardous employment. G.L. c. 152, § 1 as amended by St. 1972, c. 374, § 1. Thus, if Nicholas Roumeliotis was an employee of the Local, Workmen's Compensation insurance should have been provided. The elimination of the "four or more" employee requirement found in the Act prior to 1972 makes it unnecessary to discuss the status of any other person on the Local's payroll.

G.L. c. 152, § 66 provides as follows:

In an action to recover damages for personal injury or consequential damages sustained within or without the commonwealth by an employee in the course of his employment or for death resulting from personal injury so sustained it shall not be a defense:

1. That the employee was negligent;

2. That the injury was caused by the negligence of a fellow employee;

3. That the employee had assumed voluntarily or contractually the risk of the injury;

4. That the employee's injury did not result from negligence or other fault of the employer, if such injury arose out of and in the course of employment.

This has been interpreted to mean that, in a suit against an uninsured employer, an employee need only prove that: (1) the employer was required to provide for payment under the Act; (2) the employer failed to provide payment; (3) the claimant was an employee of the employer; and (4) the injury arose out of and in the course of his employment. Locke, **Workmen's Compensation,** 29 Mass. Practice Series, § 654. In addition, the non-complying insurer may be sued for the full scope of tort damages. LaClair v. Silberline Manufacturing Co., Inc., 1979 Mass.Adv.Sh. 2228, 2233-2234.

### A. Are the Plaintiffs the Proper Parties?

Plaintiffs in the instant case are the decedent's widow and dependent children. Defendants are now contending that the plaintiffs are not the proper parties in this case.[1] A basis for this claim is that a suit for wrongful death under G.L. c. 229, § 2 must be brought by the executor or administrator of the deceased's estate. Gaudette v. Webb, 362 Mass. 60 (1972). Plaintiffs, on the other hand, argue that the provisions of G.L. c. 152 control the present action, and that under the statute the deceased's dependents are the proper parties where no claim of conscious pain and suffering is made. Locke, **Workmen's Compensation,** 29 Mass. Practice Series, § § 399, 465. See generally, Shaw's (dependent's) Case, 340 Mass. 717 (1960). Plaintiffs also rely on G.L. c. 229, § 2B which allows a widow to sue her husband's employer for his negligent death.

Initially, it must be determined whether the defendant has waived this claim. In varying jurisdiction a claim that the plaintiffs are not the proper parties to a suit is treated as a claim under Rules 17(a), 9(a), 12(b)(6) and 12(b)(7). See Wright and Miller, **Federal Practice and Procedure,** § 1554. Of course, if this claim is treated as a motion under Rule 9(a) it would be waived since not properly pleaded. However, in Massachusetts such a motion is often treated under Rule 12. According to Smith and Zobel, **Rules Practice,** 7 Mass. Practice Series § 17.1, "'[t]he defense that the plaintiff is not a real part in interest often means that an indispensable party [the real

---

[1]The question of the plaintiffs' capacity to bring suit was originally raised by the court sua sponte. While both parties have raised this issue in their briefs, it was not mentioned during either party's closing argument.

party in interest] has been omitted from the action [Mass.R.Civ.P. 12(b)(7)]. If so, this defense may be raised after pleading, even during the trial. [Mass.R.Civ.P. 12(h)(2)]. Or such a defense may rest on plaintiff's failure to state a claim upon which relief can be granted, [Mass.R.Civ.P. 12(b)(6)] with the same result." Thus, it can be concluded that the claim has not been waived.[2]

Treating defendant's allegation as a motion under Mass.R.Civ.P. 12(b)(7), it must now be determined whether plaintiffs are the proper parties. G.L. c. 152, § 66 merely refers to "an action". Thus, it is unclear whether the "standing" provisions of c. 152 or those of tort law control in an action against an uninsured employer. There is no case law discussing this point in Massachusetts. However, suits brought against uninsured employers have consistently been labeled actions in tort, and not as claims under G.L. c. 152. See, e.g., **Taylor v. Newcomb Baking Co.,** 317 Mass. 609 (1945); **Fisher v. Ciaramitaro,** 345 Mass. 199 (1962); **Uberto v. Kaufman,** 348 Mass. 171 (1964); **Paananen v. Rhodes,** 1 Mass.App.Ct. 12 (1972). It must be concluded, therefore, that the present action is also one in tort.

The next question which must be answered is what "tort" action exists for wrongful death. The "right to recovery for wrongful death is of common law origin." **Gaudette v. Webb,** 362 Mass. 60, 71 (1972). However, the wrongful death statute regulate what damages are recoverable, who can initiate the suit and which statutes of limitation apply. **Id.** In the present case, plaintiffs rely on G.L. c. 229, § 2B as granting them standing to bring this suit. Under c. 229, § 2B the surviving wife must bring the action. On its face this statute would appear to be applicable in that it controls damages for death of an employee caused by the negligence of an employer, and it may be argued that c. 152, § 66 merely eliminates the requirement that the plaintiff prove negligence. However, G.L. c. 229, § 6E states that damages in an action under § 2B must be "assessed with reference to the degree of culpability of the employer . . ." and it limits damages to "no less than two thousand nor more than twenty thousand

dollars". Punitive damages are clearly inapplicable to an action authorized by G.L. c. 152, § 66 since no evidence of negligence is necessary to establish liability.

The fact that the damage provisions of § 6E are so entwined with the liability provisions of § 2B mandates a conclusion that the purpose of § 2B is punitive. Since G.L. c. 152, § 66 cannot be read to authorize an action for punitive damages, it must be found that reliance on G.L. c. 229, § 2B is misplaced.

An action under G.L. c. 229, § 2, the general wrongful death statute, may be maintained in the present case. This section applies to "[a] person who (1) by his negligence causes the death of a person" and punitive damages are authorized only in the case of "malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant." G.L. c. 152, § 66 can be reconciled with G.L. c. 229, § 2 by finding that the plaintiff need not establish negligence and can recover all damages listed in c. 229, § 2 except punitive damages based on gross negligence.

The only obstacle in the path of this analysis is the phrase in G.L. c. 229, § 2 which states that "the liability of an employer to a person in his employment shall not be governed by this section." This

---

[2] In the recent case of Garbincius v. Boston Edison Co., Nos. 79-1365; 79-1376 (1st Cir. May 28, 1980), a question arose as to the capacity of an ancillary administrator to bring a wrongful death action. The court concluded that the defendants had waived any defects as to the plaintiff's standing under Fed.R.Civ.P. 9(a). Id. at 3. In that case, however, Rule 9 was clearly applicable since the plaintiff had specifically alleged that he was the duly appointed administrator of the estate whereas, in fact, he was not appointed as an ancillary administrator until much later. Thus, the question seemed to be whether or not the plaintiff was truly the administrator of the estate. In the instant case, however, the question is whether the administrator must bring suit, not whether the plaintiff is the administratrix of the estate. Given the confusion surrounding the identity of the proper plaintiffs in a suit against an uninsured employer, and the fact that the issue raised is often treated as a motion under Rule 12, the court deems it appropriate to address the issue at this time.

phrase leaves actions under G.L. c. 152; c. 229. § 2B: and c. 153 (liability of employers to employees for injuries not resulting in death) intact. However, it cannot be read to exclude an action in the present case or else the action authorized for the death of an employee under G.L. c. 152, § 66 would be meaningless. Statutes should be reconciled if at all possible. To accomplish this, G.L. c. 152. § 66 must be read to authorize suits under G.L. c. 229, § 2.

As noted previously, G.L. c. 229, § 2 requires an action to be brought by an administrator or executor. Thus, the defendant is correct in asserting that the plaintiffs are not the proper parties in. this action. Such a conclusion, however, does not necessitate a dismissal.

"Dismissal under Rule 12(b)(7) [for failure to join an indispensable party] should occur only if the absent party is both indispensable and also beyond reach of the court's process. If he is subject to its jurisdiction, the court should order him made a party, as Rule 19 seems to require." Smith and Zobel, **Rules Practice**, 6 Mass. Practice Series, § 12.15. Mass.R.Civ.P. 17(a) "allows a correction of plaintiff's identity or capacity, despite the intervening running of the statute of limitations" especially where "an understandable mistake has been made in the selection either of the proper plaintiff in the action or of the plaintiff's proper capacity to maintain the action, and the statute of limitations has since run on the claim". Smith and Zobel, **Rules Practice**, 7 Mass. Practice Series, § 17.6.

In the present case, there can be no claim that the defendant will be prejudiced by a substitution of parties even after trial. The case has been fully tried and defended. In a tort action for wrongful death, the administrator or executor holds any recovery as a statutory trust fund for distribution to the statutory beneficiaries. **Sullivan v. Goulette**, 344 Mass. 307 (1962). The beneficiaries in the present care are the widow and children of the deceased. G.L. c. 229, § 1. In an action for the death of employee under G.L. c. 152, the widow and dependent children of the deceased would be the beneficiaries of any recovery.

G.L. c. 152, § 31. Thus, there can be no claim that the case was not adequately presented. The legal representative of the deceased should be substituted as a party plaintiff in the present case.

## B. Was Nicholas Roumeliotis an Employee of the Defendant?

G.L. c. 152, § 1(4) defines an employee in part as "every person in the service of another under any contract of hire, express or implied, oral or written . . .". The issue presently in dispute involves an interpretation of the phrase "in the service of another". The question is whether Nicholas Roumeliotis was an employee or employer: there is no contention that he was an independent contractor.

In Massachusetts the constitution of a union is considered as a contract which defines the rights, duties and powers of the members and officers. **Sullivan v. Barrows**, 303 Mass. 197, 201 (1939); **Cameron v. Durkin**, 321 Mass. 590, 594 (1947). If Nicholas Roumeliotis is found to have been an employee, it cannot be disputed that he had a "contract of hire".

While the case law in Massachusetts is clear that an officer of a corporation is considered an employee for purposes of Workmen's Compensation, and that a working partner and a trustee of a business trust are considered employers, no cases concerning the status of an officer of an unincorporated association have been found. A review of cases in other jurisdictions has not revealed any other cases directly on point. Thus, this discussion must begin with an analysis of the Massachusetts cases dealing with corporations and business trusts.

### 1. Corporate Officers

The leading case in Massachusetts dealing with the status of an officer of a corporation as an employee is **Emery's Case**, 271 Mass. 46 (1930). There claimant was a stockholder and treasurer of a corporation. She received a weekly salary and ran a "hand concaving machine" until she was injured. The court found her to be an employee under the Workmen's Compensation Act for two major reasons. First,

"[i]n the absence of special circumstances, a stockholder or officer of a corporation in its service is 'in the service of another' within the meaning of the statute, since the corporation is a legal entity distinct from any of its stockholders or officers." Id. at 48 (cites omitted). Second, the claimant "was expressly included within the terms of the policy of [Workmen's Compensation] insurance." Id. at 49. Thus, in ›Massachusetts no distinction is made between those corporate officers engaged in "high level" or "executive tasks" and those performing manual labor. "The only requirement is that the wages of the corporate officer or stockholder as an employee be included on the payroll which is to be the basis for the premium audit of the insurer." Locke, Workmen's Compensation, 29 Mass. Practice Series, § 108 (cites omitted).

This Massachusetts policy finds support in Larson, **Workmen's Compensation Law**, § 54.21. As Larson writes:

> This is sound reasoning as a matter of corporation law, since the ultimate power of the corporate employer is lodged, not in the officers, but in the board of directors acting collectively. The particular character of the officer's duties does not change the controlling facts establishing not only the technical employment relation but the broader appropriateness of coverage under compensation theory. After all, the corporation officer is working for a living, his compensation is related to the fact that he works, he is subject to removal by the board, and, as the Kentucky court tellingly asks, if he is not working for the corporation, for whom is he working?

The Kentucky case referred to is **Mine Service Co. v. Green**, 265 S.W.2d 944 (Ky. 1954). There, the president and general manager died in the course of his employment. He received a monthly salary and was listed on the corporation payroll. In finding the deceased to be an employee, the court relied on the power of the board to remove him from office, and the fact that "he was involved in [the corporation's] business only because he had been hired by it." Id. at 946.

## 2. Working Partners and Trustees

In Ryder's Case, 341 Mass. 661 (1961), the claimant, a trustee and beneficiary of a business association formed under a "Declaration of Trust" was found to be an employer and not "in the service of another" under the Workmen's Compensation Act. The court analogized the trust to a partnership since, as both a trustee and a beneficiary, the claimant had the "same sort of power he would have had in an ordinary partnership," Id. at 664, that is to say equal rights in the management and conduct of the business. The court then relied on Larson, Workmen's Compensation Law, § 54.31 to conclude that as a "working partner" the claimant was not entitled to relief. As Larson writes:

> A partnership is not, except for a few specific purposes, an entity separate from its members. Therefore, since the partnership is nothing more than the aggregate of the individuals making it up, a partner-employee would also be an employer. The compensation act cannot be supposed to have contemplated any such combination of employer and employee status in one person. This difficulty, standing alone, might not be insuperable, since it would be perfectly possible to say that the intention of compensation legislation was to treat the partnership as an entity in order to effectuate its beneficent purposes . . . It is a much heavier task to segregate the partnership entity to such an extent that the same person can be both employer and employee.

cited in **Ryder's Case** at 665-666.

Although not cited by the court, Larson goes on to add that when the claimant is simply an employee of the partnership, courts uniformly treat the partnership as a separate employing entity. Larson at § 54.31. This would undoubtedly be the result in Massachusetts since "partnership" is listed as an employer in G.L. c. 152, § 1. However, in the case of a partner, the fact that "each partner has by law an equal share in management, and is therefore in actual possession of the powers of the employer"

makes it impossible, according to Larson, to classify the partner as an employee. Larson, supra at § 54.32.

### 3. Officers of Unincorporated Associations Generally.

Unfortunately, Larson does not discuss the status of officers of unincorporated associations in his text. As noted previously, no cases directly on point to the instant case were found in Massachusetts or in other jurisdictions: In several out-of-state cases it was not disputed that the union officer was an employee, and compensation was denied on other grounds. See, e.g., Hamilton v. Transport Workers Union of Greater New York, Local 100, 16 N.Y.2d 696, 261 N.Y.S.2d 892 (1965) (vice-president of labor union, heart attack during wildcat strike did not arise out of and in the course of employment); Travelers Insurance Co. v. Evans, 425 S.W.2d 611 (Tenn. 1968) (staff officer of union, heart attack did not arise out of and in the course of employment).

In one case found discussing the status of a union executive as an employee, compensation was denied. However, the facts of that case differ significantly from the case before the court. Thus, in Nallan, Jr. v. Motion Picture Studio Mechanics Union, Local #52, 49 A.D.2d 365, 375 N.Y.S.2d 164 (1975), rev'd 40 N.Y. 2d 1044, 391 N.Y.S.2d 853 (1976) claimant, a member of the union executive board, was shot while attending a union meeting. He received no compensation or salary for his services as a board member other than a stiped of $10/meeting. In addition, the union did not control his activities or have the right to discharge him from the board. Consequently, the court concluded that he was not an employee.

In two other cases, however, the business agent of a labor union was found to be an employee.[3] Standard Accident Insurance Co. v. Hoage, 66 F.2d 275 (D.C. Cir. 1933), involved a suit under the Longshoremen's and Harbor Workers' Compensation Act. There a business agent, Lindsay, was killed while returning from performing union work. He was an elected officer and could be removed from office for cause. The

position of business agent constituted a full time job and he was paid $80/week. The court concluded as follows:

> This employment was totally distinct from the ordinary duties and powers of the members of the union in general. The fact that Lindsay was a member of the union did not prevent him from being likewise an employee for the performance of services such as did not pertain to membership alone, nor was Lindsay compensated for his services otherwise than by the wages paid him therefore.

Id. at 276.

After so finding, the court went on to analogize the situation of a labor union to that of a corporation. As the court held: "The union is a legal entity and answers to the term 'association' as used in the statute. It may be sued as an organization for torts committed by it. United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 675, 27 A.L.R. 762. It may enter into business contracts of various kinds as an association." Id. Finally, the court concluded that the Longshoremen's Act, like the Workmen's Compensation Act, should be liberally construed, id. at 277, and found the business agent to be an employee of the union. See also Toner v. International Assoc. of Bridge, Structural and Ornamental Iron Workers, 113 N.J. Law 29, 172 A. 389 (1934) (suit under Workmen's Compensation Act).

Union officers have also been found to be "employees" in other contexts. See, e.g.,

---

[3] Despite the fact that the deceased in the instant case was a business agent in addition to being Secretary/ Treasurer, the cases concerning business agents cannot be considered to be directly on point. A regular business agent in the local is subject to removal by the Secretary/Treasurer and his salary is set by the Secretary/Treasurer. Obviously, when both positions are held by one man, his duties and powers differ significantly. However, the cases concerning the status of business agents are significant in that they help determine the criteria to be used in deciding when and if an officer of an unincorporated association is considered to be an employee.

International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, Local 180, C.I.O. v. Industrial Commission, 21 N.W.2d 711 (Wisc. 1946) (voluntary unincorporated union is employer and officers and members are employees under unemployment compensation act); Blassie v. Kroger Company, 345 F.2d 58 (8th Cir. 1965) (officer of union is employee under Labor Management Relations Act).

## 4. Unincorporated Associations in Massachusetts

An unincorporated association in Massachusetts has characteristics similar to both a partnership and a corporation. Its most striking resemblance to a partnership lies in the fact that for purposes of a lawsuit it is not considered to be distinct from its members, "and no judgment can be entered in favor of or against it as distinguished from its members". Members of Bakery & Confectionary Workers International Union of America, Local No. 458 v. Hall Baking Co., 320 Mass. 286, 291 (1946) (and cases cited therein). Thus, like a partnership, an association must "sue and be sued in the names of all the members ..." Donovan v. Danielson, 244 Mass. 432, 436 (1923), although a few members may be sued as representatives of the whole. Id. See also Mass R.Civ.P. 23.2 This, however, is basically where the similarity between an unincorporated association and a partnership ends.

A member [of an association] has neither a partner's right to share in profits as they accrue nor his liability in solido for any losses ... He can not be held on contracts which he did not actually authorize or ratify. Every partner is an agent of the partnership for purposes of its business, but a member of an association has as such no power to bind the other members by contracts, and even officers are not general agents for the association, but must ordinarily look to its property for reimbursement. A member, unless it is specifically provided otherwise, has no transmissible interest in the association while it is a going concern, by conveyance inter vivos or will or inheritance, and has nothing which can be reached by his creditors. His death does not dissolve the association, and he can not force a dissolution in his lifetime except by unanimous consent or at least a majority vote. In short, his control over affairs and his interest in the common property are much less than those of a partner, and he has little more than a right to use this property together with the other members, and to gain such other advantages as he can from their companionship in the enterprise.

Note, The Internal Affairs of Associations Not for Profit, 43 Harv. L.Rev. 993, 996-997 (1930).

Larson found the fact that each partner in a partnership had "actual possession of the powers of the employer" an insurmountable obstacle to classifying a partner as an employee. Larson, Workmen's Compensation Law, § 54.32. However, officers of an unincorporated association lack such powers. For example, in the present case the Secretary/Treasurer needs the co-signature of another officer before he can sign a check. The officers, acting together as an Executive Board supervise the Secretary/Treasurer's activity. The entire Local, in turn, is regulated by the International. The elected officer is subject to removal for cause. The Secretary/Treasurer's duties and responsibilities are clearly regulated by the union's constitution. Thus, the internal workings of the unincorporated association are more akin to that of a corporation than that of a partnership. Note, Unincorporated Associations in New England, 37 B.U. L.Rev. 336 (1957). The ultimate authority lies in a group and not in an individual. In fact, an unincorporated association has been defined as "a body of persons organized for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation". Hecht v. Malley, 265 U.S. 144, 157 (1924) (emphasis added).

In analogizing an unincorporated labor union to a corporation, the court in Standard Accident Insurance Co. v. Hoage, 66 F.2d 275 (D.C. Cir. 1933) relied on the

fact that: (1) the union is a legal entity and is defined as an "association" under the statute; (2) it can be sued as an organization for torts committed by it, and (3) it can enter into business contracts as an association. The definition of "employer" found in G.L. c. 152, § 1 recognizes that an "association" may be an employer. Thus, the members of the union, acting as a group, an entity, can employ personnel under the statute. While a union in Massachusetts cannot be sued as an organization for the torts committed by it, in reality its members are often treated as an entity. For example, individual members may sue all other members for wrongful exclusion. See, e.g., **Malloy v. Carroll, 287 Mass. 376 (1934).** Also a union has been specifically found to constitute a separate entity, capable of being held in contempt and fined for failure to obey a return to work order. **Labor Relations Commission v. Boston Teachers Union, Local 66,** 1977 Mass.Adv.Sh. 2738, 2753-2758, relying on G.L. c. 150E, § 9A(a). Finally, a union may enter business contracts as an association, and all members may be contractually bound even if named merely as an association and not individually. **Members of Bakery and Confectionary Workers International Union of America, Local No. 458 v. Hall Baking Co., 320 Mass. 286, 292 (1946)** (and cases cited therein). The analogy to a corporation, especially with respect to the duties, powers and responsibilities of the union officer is clearly justified.

> As a practical matter, a voluntary association does act as a unit ... To the man in the street who deals with a labor union or a club, there is no difference apparent between the conduct of a similar incorporated association. Nor is any difference apparent to members. Affairs are managed in quite the same fashion: business is transacted in the association name: the entity in the world of things is quite as definite.

Note, **Legal Status of Voluntary Associations,** 33 Harv. L. Rev. 298, 300 (1919). See generally Note, **Dogma and Practice in the Law of Associations,** 42 Harv. L. Rev. 977 (1928).

The Workmen's Compensation Act is concerned with workers. It is "to be construed broadly to include as many employees as its terms will permit." **Tracy v. Cambridge Junior College, 364 Mass. 367, 375 (1973)** (cites omitted). "The primary purpose of the words 'in the service of another' is to require the relation of master and servant, and to exclude independent contractors." **Warren's Case, 326 Mass. 718, 719 (1951).** "It is the fundamental principle of law that the relationship of master and servant exists wherever the employer retains the right to direct the manner in which the business or work is to be done, as well as the result to be accomplished ..." **Toner v. International Association of Bridge, Structural and Ornamental Iron Workers, 113 N.J. Law 29, 172 A. 389 (1934).** "The power to discharge is essential between master and servant. and is an indicium of the relationship." **Id.** at 390. In the case at bar, the association, as an entity, controlled the activities of the Secretary/Treasurer. The Executive Board, specifically, reviewed his work monthly. He was subject to removal. He performed work apart from the general membership and received a weekly salary. In short, Nicholas Roumeliotis was an employee of the union. He was also listed as such on the Local's payroll.

### B. Did Nicholas Roumeliotis' Death Arise Out Of and In The Course of His Employment?

G.L. c. 152, § 7A reads as follows:

> In any claim for compensation where the employee has been killed, or found dead at his place of employment or is physically or mentally unable to testify, it shall be prima facie evidence that the employee was performing his regular duties on the day of injury or fatality or death or disability and that the claim comes within the provisions of this chapter, that sufficient notice of the injury has been given, and that the injury or death or disability was not occasioned by the wilful intention of the employee to injure or kill himself or another.

This has been interpreted to mean that the fact that an employee was found dead at his

place of employment constitutes prima facie evidence that the death arose out of and in the course of the employment. **Anderson's (dependent's) Case,** 373 Mass. 813, 816-817 (1977). "[P]rima facie evidence may be met and overcome by evidence sufficient to warrant a contrary conclusion; even in the presence of contradictory evidence, however, the pima facie evidence is sufficient to sustain the proposition to which it is applicable." **Id.** at 817 (cites omitted). The elements needed to establish that the death arose out of and in the course of employment are identical in a case against an uninsured employer. **Albert v. Welch,** 360 Mass. 397, 399 (1971).

In the instant case it was established that Nicholas Roumeliotis was found dead in his place of employment. Defendant relies on the fact that the deceased did not "appear with any consistency at the union's place of business for the purpose of work" (**Supplemental Brief for the Defendant** at 6) to support its argument that his death was not work-connected. However, there was evidence that the deceased did work at the union's place of business in the evenings. The prima facie case has not been rebutted.

The fact that Nicholas Roumeliotis was murdered does not negate the presumption required by G.L. c. 152, §7A. His death must be considered work-related even though murder is generally not considered an occupational hazard. In **McLean's Case,** 323 Mass. 35 (1948) a taxicab driver was found unconscious in his cab with the meter running. He had been severely struck in the head from behind. He was totally incapacitated and could not give an account of what had happened to him. The police never found the assailant. The court found the employee's injuries to be compensable under the Workmen's Compensation Act, stating that "[i]t is true that the employee might have been exposed to a similar risk if he had not been driving the taxi. But that is not the question. The question is whether his employment brought him in contact with the risk that in fact caused his injuries". **Id.** at 38 (cites omitted). In the instant case, Nicholas Roumeliotis was at his employer's place of business. There is evidence that he did

work at the office at night. His employment brought him in contact with the risk that caused his death. **See also Baran's Case,** 336 Mass. 342 (1957) (employee unintentionally shot while leaving work by a boy engaged in aiming practice; injuries found compensable); **Souza's Case,** 316 Mass. 332 (1944) (employee died in a fire while asleep in a lodging home; death compensable since absence from home overnight required by job); **Employers Mutual Liability Insurance Co. v. Rosenfeld,** 130 Ga. App. 251, 202 S.E.2d 678 (1973) (corporate officer found shot to death in car near employer's premises; found compensable).

In the case of an unexplained murder, the court will not assume that the killing was personally motivated and therefore beyond the scope of the Act. See, e.g., **Kelly v. New York City Transit Authority,** 33 N.Y.2d 373, 353 N.Y.S.2d 164 (1974); **State Compensation Fund v. Delgadillo,** 14 Ariz.App. 242, 482 P.2d 491 (1971). See generally Larson, Workmen's Compensation Law, § § 10.32; 11.33. The prima facie case established by G.L. c. 152, §7A is in force, and, in the instant case, the defendant has not overcome the presumption that the death falls within the provisions of the Act.

### D. Can the Plaintiffs Recover Damages for Loss of Consortium?

G.L. c. 229, § 2 states that damages in an action for wrongful death shall include "... (1) compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered ..." Thus, loss of consortium is recoverable.

Plaintiffs, however, did not specifically plead loss of consortium as an element of damages. Such a failure would have been fatal to the plaintiffs' claim under the punitive wrongful death statute. See **Minkley v. MacFarland,** 371 Mass. 891 (1976). Since the statute only provided for punitive damages, loss of consortium comprised a separate, although related, count in the suit. See generally **Diaz v. Eli Lilly,** 364 Mass. 153 (1973). Although there are no cases on

point, a reading of the present version of c. 229, § 2 mandates a finding that loss of consortium need not be specifically mentioned in the complaint.

Under the present statute, loss of consortium is listed with the other general damages such as loss of income. Special damages, such as funeral and burial expenses and punitive damages are listed separately. Under c. 229, § 2 loss of consortium is not a separate action, rather it is a general damage which can be recovered without being specifically pleaded.

> [T]he more general theory is to the effect that the wrongful act being once established as the cause of death and the decedent being free from fault, the plaintiff may, under a general allegation of damages, recover, within the amount claimed, for all such injuries as are ordinarily and usually suffered from such a loss by those standing in the relation to the decedent sustained by those in whose interest the suit is brought. Where this is the rule, the defendant is always sufficiently advised as to what he must meet on the question of damages.

22 Am. Jur.2d, § 221.

The Legislature has recognized that loss of consortium is "ordinarily and usually suffered" in a death action. In the instant case, plaintiffs gave sufficient notice by alleging that this action involved the death of an employee and that the employer was uninsured. G.L. c. 152, § 66 allows for full tort recovery in such situations. Loss of consortium is an element of such tort damages.

### III. ULTIMATE FINDINGS AND CONCLUSIONS

1. The membership of the Automotive Chauffeurs Parts and Garage Employees, Local 841 constitute an employer under G.L. c. 152.

2. Nicholas C. Roumeliotis was an employee of such employer.

3. The employer was required to provide for payment under G.L. c. 152.

4. The employer failed to provide such payment.

5. Nicholas C. Roumeliotis' death arose out of and in the course of his employment.

6. Damages for the loss of reasonably expected net income of the decedent amounts to $284,000.

7. Damages for the loss of services, protection, care, assistance, society, companionship, conform, guidance, counsel and advice of the decedent amounts to $8,500.

8. Defendants liable for these damages are found in the list submitted to this court as plaintiffs' Exhibit 15.

### IV. ORDER

It is hereby Ordered and Adjudged that

(1) the legal representative of the decedent be substituted as plaintiff in this action;

(2) that such plaintiff recover of the defendants the sum of Two Hundred Ninety-Two Thousand Five Hundred Dollars ($292,500).

James J. O'Leary
Justice of the Court
Sitting Pursuant to
Statutory Authority
C. 303 of the Acts of 1976